376 S.E.2d 154

**RANGER FUEL CORPORATION**

v.

**The WEST VIRGINIA HUMAN RIGHTS COMMISSION and Joyce Ann Marcum.**

**No. 18316.**

Supreme Court of Appeals of West Virginia.

Dec. 12, 1988.

Gail Falk, Decatur, Ga., for Joyce Ann Marcum.

Charles G. Brown, Atty. Gen. and Sharon M. Mullins, Asst. Atty. Gen., for H.R.C.

Charles M. Surber, Jr., Jackson & Kelly, Charleston, for appellee.

NEELY, Justice:

Joyce Marcum applied for a job with Ranger Fuel in 1981 and indicated on her application that she would like to be a shuttle car operator or a roof bolter helper. Ms. Marcum was interviewed by the personnel manager and informed that she would be hired as a general inside laborer at Ranger's Beckley No. 4 Mine if she passed the pre-employment physical examination.

The duties of a general inside laborer include: shoveling belts and roadways; laying track; setting timber; dusting rock; greasing belts; making belt splices; loading belts; making supply runs; working on the move crews; and, other tasks associated with periodic assignment to the face area of the mine. The inside temperature of the Beckley No. 4 Mine was roughly 60° Fahrenheit, and the underground portion was damp with many areas of standing water, particularly along the belt lines. The height of the main lines varied from 48 to 72 inches and the height of the underground operating sections was 48 inches or less.

In February, 1982, Ms. Marcum underwent a pre-employment physical examination conducted by Dr. Bernard J. Begley. Ms. Marcum completed a lengthy questionnaire that was reviewed by Dr. Begley before he examined her, and afterward Dr. Begley checked her height, weight, blood pressure, ears, eyes, neck, chest, heart, and skin. He also examined her neurological system by testing her reflexes, and examined her musculoskeletal system for posture, range of motion, back and knee problems. He then tested her hearing, eyesight, breathing, and took an x-ray of her chest. The record indicates that verification of all of these bodily functions was directly related to determining whether a prospective employee could function adequately as a general underground miner *in low coal.*

Dr. Begley's examination revealed the presence of active lesions associated with the condition of psoriasis located predominantly on Ms. Marcum's lower extremities. These lesions were of a medium degree of severity and, because of the specific requirements of the job for which Ms. Marcum was being considered, Dr. Begley recommended that she not be hired. This unfavorable recommendation was based upon the fact that Ms. Marcum would be required to crawl in the low coal (48 inches) and execute her duties on her hands and knees. Dr. Begley concluded that the po-

tential trauma to her hands, wrists, elbows, and knees would inevitably aggravate her psoriasis. This aggravation had a high likelihood of leading to secondary infection that would require extensive treatment.

Part of Dr. Begley's concern arose from the possibility of "Koebner phenomenon". Koebner phenomenon involves an isomorphic response occurring in 50 percent of psoriasis cases that results from the stimulus of trauma or overexposure to ultraviolet light and produces a psoriasis lesion in a part of the body that had not had one before. Thus, even if hands and knees did not already have psoriatic lesions, the trauma of crawling on coal particles presented, in Dr. Begley's opinion, a high likelihood of sufficient trauma to produce psoriatic lesions via the Koebner phenomenon.

Based upon Dr. Begley's recommendation, Ranger did not hire Ms. Marcum. On 23 April 1982, Ms. Marcum filed a complaint with the West Virginia Human Rights Commission alleging discrimination on the basis of her alleged handicap. Ms. Marcum prevailed before the commission and Ranger appealed to the Circuit Court of Raleigh County which reversed the commission. Ms. Marcum and the commission now appeal that decision here. We affirm the judgment of the circuit court in part and reverse in part.

The circuit court ruled in favor of Ranger with regard to three of Ranger's assignments of error. First, the circuit court concluded that this Court's holding in *Allen v. State Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984) is unconstitutional because this Court does not have authority under *W.Va. Constitution*, art. VIII, § 3 to direct the Administrative Director of Courts to provide Hearing Examiners to the West Virginia Human Rights Commission to hear the backlog of cases, of which this case was one. Second, the circuit court held that Ms. Marcum was not and is not a handicapped person. And, third, the circuit court held that the West Virginia Human Rights Commission could not apply its rules promulgated 1 August 1982 concerning discrimination against the handicapped to this case when the events in this case had transpired before the effective date of the rules.

I

It appears that the cynosure of the circuit court's determination that the procedures inaugurated by the *Allen* decision are unconstitutional is contained in the 15th Conclusion of Law of the circuit court's opinion which says:

> This judge is not saying that the H.R.C. or Hearing Examiner were guilty of bad faith or impropriety. To the contrary, it appears that the Hearing Examiner and H.R.C. were acting pursuant to the Court's directives—it's the Court's directives that are erroneous. The Hearing Examiner and H.R.C. made decisions on the merits. *It is when any decision herein is appealed, that the Supreme Court's action is spotlighted and the spectre of the Court passing on or defending its own delegated work that causes concern and could create ethical and conflict of interests issues.* (emphasis supplied)

■ Although the circuit court's sensitivity to possible conflict of interest is commendable, it is misplaced; the circuit court's concern apparently proceeds from a misunderstanding of what happened in the *Allen* case. The sum and substance of the *Allen* decision was simply that the West Virginia Supreme Court of Appeals would provide additional manpower (and, not incidentally, additional money) to the West Virginia Human Rights Commission to enable it to dispatch an unconscionably clogged docket. Certainly it is a failure of due process when the government extends to aggrieved citizens certain rights, and then makes those rights a nullity by failing to provide a remedy. *See West Virginia Committee on Legal Ethics v. Triplett*, 180 W.Va. 533, 378 S.E.2d 82 (1988). As the circuit court correctly admits, "the Hearing Examiner and H.R.C. made decisions on the merits."

■ Under the *Allen* decision, this court provided no administrative guidance what-

soever on the way decisions were to be made by the hearing examiners; all this Court did was provide additional hearing examiners whose decisions on the merits were no more immune from adverse review by the West Virginia Human Rights Commission, the circuit court, or this Court than the decisions of hearing examiners regularly employed by the Commission. Although the circuit court disagreed,[1] we find no difference between our appointment of hearing examiners for the West Virginia Human Rights Commission and our or other courts' appointments of masters, trustees, receivers, jail administrators, or school district administrators in cases where such extraordinary measures have been necessary in order to guarantee to citizens their basic constitutional rights. Accordingly, the decision of the circuit court on the unconstitutionality of the *Allen* decision is reversed.

## II

■ The second holding of the circuit court, namely that the West Virginia Human Rights Act, *W. Va. Code,* 5–11–1 [1987] *et seq.,* did not apply because Ms. Marcum is not a "handicapped person" as defined by the statute is correct. A handicapped person seeking to claim employment discrimination under *W. Va. Code,* 5–11–9 [1981], must prove as a *prima facie* case that she (1) meets the definition of "handicapped," (2) possesses the skills to do the desired job with reasonable accommodation and (3) applied for and was rejected for the desired job. Ms. Marcum fails to present a *prima facie* case because she does not meet the definition of "handicapped." *W. Va. Code,* 5–11–3(t) [1987] defines handicap as follows:

The term "handicap" means any physical or mental impairment which substantially limits one or more of an individual's major life activities.

Under § 77–1–2, *Interpretive Rule Human Rights Commission* promulgated effective 1 August 1982, the Human Rights Commission interprets *Code,* 5–11–3(t) [1981] as follows:

"Physical or Mental Impairment" includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, autism, multiple sclerosis, cancer, diabetes, heart disease, obesity, drug addiction, tobacco addiction and alcoholism. However, use or abuse of alcohol, tobacco or drugs in the absence of medically verifiable addiction does not constitute a "Physical or Mental Impairment."

When a statute is clear and unambiguous, rules and regulations interpreting it are unnecessary. Furthermore, when rules and regulations attempt to alter a perfectly clear legislative definition, they are invalid.

In the case before us we need not quarrel with the specific details of § 77–1–2, *Interpretive Rule Human Rights Commission* because Ms. Marcum's problem with psoriatic lesions does not fall within either the statutory definition or the rule. One of the purposes of the West Virginia Human Rights Act is to assure equal employment opportunity to those individuals who are able and competent, but who, because of their handicap, have *substantial* difficulty in finding work. *W. Va. Code,* 5–11–2 [1981]. We note that West Virginia's definition of "handicap," *W. Va. Code,* 5–11–3(t) [1987] is more restrictive than the definition of "handicapped individual" provided in the Rehabilitation Act of 1973. 29 U.S.C. § 706(8)(B) [1986] defines "handicapped individual" as:

[A]ny person who (i) has a physical or mental impairment which substantially

---

1. The court in its 11th and 12th conclusions of law found as follows:

Counsel for Ms. Marcum and H.R.C. argue that the action and conduct of the Court in this case is no different from the Court taking over and operating a jail, school district and/or a business when bankrupt or insolvent.

There is a difference. The difference is that in those cases where the Court has appointed a master, trustee, receiver or jail administrator or school district administrator, such appointments were made after those cases had been in court, with an opportunity for the parties to be heard, with the Court determining the relief necessary.

limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

The decision of the West Virginia Legislature to adopt only the definition found in part (i), quoted above, and not parts (ii) and (iii), the expansive parts of the federal definition, indicates the legislature's clear intent to limit Human Rights Act protection to those individuals who, because of their handicap, have *substantial* difficulty in finding work.[2] For that reason, the reach of § 77–1–2.7, *Interpretive Rule Human Rights Commission* is probably too broad, but that issue must await another case.

■ In order to achieve equality of employment opportunity for handicapped individuals, the Act imposes an obligation on employers to make "reasonable accommodations." *W.Va.Code,* 5–11–9(i)(4) [1981].[3] The definition of "handicap," therefore, must be strictly construed in order to help individuals with *substantial* handicaps achieve employment with due consideration to the interests of the other employees, employer and the public. In the present case, although Ms. Marcum is prevented by her psoriatic lesions from employment as a general underground miner in low coal, we find that Ms. Marcum is not a handicapped person within the definition of the Act because she does not have a physical or men-

tal handicap which *substantially* limits her *major* life activities.

■ Even assuming arguendo, however, that Ms. Marcum is "handicapped" within the meaning of the statute, she was still not able and competent to perform the job of general underground miner in low coal. *W.Va.Code,* 5–11–9 [1981] provides in pertinent part:

It shall be unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

(a) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment *if the individual is able and competent to perform the services required* even if such individual is blind or handicapped. (emphasis supplied)

The "able and competent" requirement means that an employer has the right not to hire or to fire employees who are unable to perform a job because either they are generally unqualified or they have a handicap that impedes job performance, subject to the "reasonable accommodation" requirement.[4] In order to determine if an individual is "able and competent," the em-

<hr>

2. Jurisdictions that have examined the three-part federal definition of "handicapped individual" have consistently interpreted part (i) strictly according to its terms and have interpreted parts (ii) and (iii) to expand the reach of the Rehabilitation Act. *See Davis v. Bucher,* 451 F.Supp. 791 (E.D.Pa.1978) (recovered drug abusers are handicapped individuals under parts (ii) and (iii) of the federal definition); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Haw.1980) (an individual with a lumbosacral anomalous joint, a spina bifida occulta and a mild rotoscoliosis who was perceived by the employer to be handicapped was a "handicapped individual" under part (iii) of the federal definition); *Pridemore v. Rural Legal Aid Soc. of West Cent. Ohio,* 625 F.Supp. 1180 (S.D.Ohio 1985) (an individual with acrophobia which prevented employment as a utility systems repairer is not a handicapped individual); *Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328 (S.D.Tex.1987) (an individual with knee problems which prevent employment as a service technician is not a handicapped individual).

3. The Rehabilitation Act of 1973, as amended, also imposed an obligation of affirmative action to employ and advance in employment qualified handicapped individuals in federal agencies, 29 U.S.C. § 791(b) [1986] and all federal contracts in excess of $2,500, 29 U.S.C. § 793(a) [1986].

4. The Rehabilitation Act of 1973, as amended, imposed a similar competency requirement. 29 U.S.C. § 794 [1986] provides in pertinent part:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

ployer must consider if, with or without reasonable accommodations, (1) the individual is currently capable of performing the work and (2) the individual can do the work without posing a serious threat of injury to the health and safety of either the individual, other employees or the public. Section 77–1–4.4, *Interpretive Rule Human Rights Commission* reflects the safety concern:

> Individual's ability to do the job safely.—Each handicapped individual's ability to perform a particular job must be assessed on an individual basis. An employer may refuse to hire or may discharge a qualified handicapped person if, even after reasonable accommodation, the handicapped person is unable to perform the duties of the job without creating a substantial hazard to his/her health and safety or that of others. However, any such decision shall be based upon the individual handicapped person's actual abilities, and not upon general assumptions or stereotypes about persons with particular mental or physical handicaps.

■ Once an applicant has established a *prima facie* case, the burden then shifts to the employer to rebut the *prima facie* case by presenting a legitimate, nondiscriminatory reason for the applicant's rejection. The fact that an applicant's handicap creates a reasonable probability of a materially enhanced risk of substantial harm to the handicapped person or others is a legitimate, nondiscriminatory reason for an employer to reject the applicant. In deciding whether an individual poses a serious threat to her personal safety the employer must show a reasonable probability of a materially enhanced risk of substantial harm to the applicant based on a consideration of the job requirements in light of the applicant's handicap, and the applicant's work and medical history. Hiring decisions should not be based on general assumptions or stereotypes about persons with that particular handicap. The employer has the burden of demonstrating that his

decision was based on objective criteria specific to the employment decision at issue.

■ It is obvious from the overwhelming weight of the medical evidence in this record that Ms. Marcum could not perform the job of general laborer without "creating a substantial hazard to his/her health and safety...." The record demonstrates that appellee was perfectly willing to hire Ms. Marcum as an underground coal miner but that her physical examination demonstrated that the nature of the work—particularly the need to crawl about on hands and knees in 48 inch coal where there were many pockets of standing water—would inevitably aggravate her psoriatic lesions. And, although we need not reach the issue in this case, we would also point out that no reasonable accommodation would have ameliorated this problem. We find that Ranger's decision not to hire Ms. Marcum was based on objective evidence showing a reasonable probability of a materially enhanced risk of substantial harm to Ms. Marcum.

### III

In light of the fact that the Rules and Regulations of the West Virginia Human Rights Commission actually militate in favor of a decision for the employer in this case, we need not reach the issue of whether those Rules and Regulations could be applied retroactively.[5] However, we would take this opportunity to point out that the Rules and Regulations of the West Virginia Human Rights Commission must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the Commission's Rules and Regulations that it has in the statute.

For the reasons set forth above, the judgment of the Circuit Court of Raleigh County is reversed in part and affirmed in

---

**5.** We cite the Commission's Rules and Regulations notwithstanding that they were promulgated after the facts in this case because placing this case within the context of the current rules has a precedential value and the employer suffers no untoward consequences due to retroactivity.

part, and this case is remanded to the circuit court with directions to enter judgment for the appellee on the grounds that Ms. Marcum was not a handicapped person.

Reversed in part, Affirmed in part, Remanded with directions to enter judgment for the defendant.