400 S.E.2d 288

**Harvey D. O'DELL**

v.

**JENNMAR CORPORATION OF WEST VIRGINIA, INC.**

No. 19426.

Supreme Court of Appeals of West Virginia.

Dec. 13, 1990.

---

2. In view of our disposition of this case under the ERISA defense, we decline to discuss the preemption under LMRA.

Scott S. Segal, Jeffrey V. Mehalic, Hostler and Segal, Charleston, for Harvey D. O'Dell.

Larry W. Blalock, Robert A. Lockhart, Jackson and Kelly, Charleston, Neil Reed, Reed & Sisler, Kingwood, for Jennmar Corp. of WV.

WORKMAN, Justice:

Harvey D. O'Dell appeals from an adverse ruling entered by the Circuit Court of

Preston County granting summary judgment to Mr. O'Dell's employer, Jennmar Corporation of West Virginia ("Jennmar"), in an employment discrimination suit. Having reviewed the record in this case, we conclude that the trial judge properly applied the law regarding summary judgment in this case and accordingly affirm the trial court's granting of summary judgment.

Mr. O'Dell was hired by Jennmar as a truck driver in 1979. His job as a truck driver included the additional duties of loading and unloading trucks. In August of 1979 appellant filed a workers' compensation claim for a back injury sustained in connection with his employment at Jennmar for which he was awarded temporary total disability benefits. Due to continuing problems, he underwent surgery to have a disc removed in November 1981. In May of 1985, appellant was granted a 15% permanent partial disability ("PPD") award based on the reopening of the August 1979 back injury claim. This award was affirmed by the Workers' Compensation Commissioner in July 1987.

Citing his back problem, appellant requested a position other than as a truck driver in September of 1984. As a result of that request, when Jennmar's night watchman left his employment in October 1984, appellant assumed the watchman position at a reduced rate of pay compared to his truck driver earnings. Whereas he earned $6.85 per hour as a driver, he took the watchman's position at $6.05 per hour. His rate of pay as night watchman was substantially higher, however, than that of the previous watchman who had been earning only $4.50 per hour. Within a month after appellant took the watchman job, he decided that he preferred employment as a truck driver. The watchman position apparently included certain custodial duties as well as shoveling coal into the company furnace on extremely cold nights.

On March 25, 1985, Frank Wolfe, another Jennmar driver, resigned his employment with the company. When appellant requested Mr. Wolfe's job, he was told that no one would be hired to fill Mr. Wolfe's position. On April 29, 1985, Frank Wolfe was rehired as a Jennmar truck driver. Jennmar maintains that there was an agreement with Mr. Wolfe that he could have his job back if he changed his mind regarding the resignation within thirty days following his departure.

On May 5, 1985, appellant did not receive a twenty-five cents per hour raise that all the other non-management, non-salaried employees were given. Also on May 5, 1985, Alan Shaw was transferred from within the company to the position of truck driver. Following these events, appellant resigned his employment on June 21, 1985. Appellant initiated a civil action against Jennmar alleging that he was discriminated against in retaliation for filing a workers' compensation claim and because he was handicapped. This case arises as an appeal from an adverse ruling granting summary judgment to Jennmar on both counts of the discrimination civil action.

■ The parties are in agreement that the standard the circuit court was required to apply in considering the motion for summary judgment was to determine whether Jennmar met its burden of demonstrating "the nonexistence of a 'genuine issue' as to a material fact." *Smith v. Buege*, 182 W.Va. 204, 209, 387 S.E.2d 109, 114 (1989). As we explained in *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987),

'The question on a motion for summary judgment is not ... whether the plaintiff has met the burden of proof on material aspects of his claim. It is, rather, whether a material issue of fact exists on the basis of the factual record developed to that date. The burden on a motion for summary judgment is not upon the nonmoving party to show that he has developed facts which would allow him to prevail if his case was submitted to a jury. The burden [of persuasion] is on the moving party to show that there is no genuine issue as to any material fact in the case.'

*Id.*, 178 W.Va. at 768–69, 364 S.E.2d at 781–82 (quoting *Lengyel v. Lint*, 167 W.Va. 272, 280, 280 S.E.2d 66, 71 (1981)). The circuit court applied this standard and determined that no material facts remained to be resolved with respect to appellant's

claims that he was discriminated against in retaliation for his filing of a workers' compensation claim and also because of his alleged handicapped status.

■ In evaluating whether to grant summary judgment to Jennmar on the retaliatory conduct claim, the circuit court properly utilized the test that we established in *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), for determining whether a plaintiff has established a prima facie case of impermissible employment discrimination. The *Conaway* test requires a plaintiff to prove:

(1) That the plaintiff is a member of a protected class.

(2) That the employer made an adverse decision concerning the plaintiff.

(3) But for the plaintiff's protected status, the adverse decision would not have been made.

*Id.*, 178 W.Va. at 166, 358 S.E.2d at 425, Syl. Pt. 3, in part. The trial court quickly determined that appellant had successfully established parts one and two of the test based on the fact that the filing of a workers' compensation claim rendered appellant a member of a protected class,[1] and because Jennmar's decision not to transfer appellant back to a truck driver position constituted an adverse decision. Applying part three of the *Conaway* test, the circuit court determined that appellant had failed to show that but for his protected status as a workers' compensation claimant, Jennmar would have permitted him to return to a truck driving position.

■ In an attempt to establish employment discrimination, appellant relied upon three pieces of evidence. First, he cited the fact that when all the other non-management, non-salaried employees received a twenty-five cents per hour raise in May 1985, he did not. Second, he contended that two other individuals, Frank Wolfe and Alan Shaw, were offered truck driving positions that should have been offered to him. Finally, he produced a note that was written by a company secretary on April 4, 1985. The note concerned appellant's pending workers' compensation claim and stated that because appellant was seeking permanent partial disability benefits, "the company feels there is no way we can put him back as truck driver and perhaps cause more bodily harm. At this particular time we can not do this."

Jennmar explained the raise disparity by detailing how appellant negotiated a higher wage per hour at the time he took the night watchman position in October 1984. When the twenty-five cents per hour raise was given in May 1985, the company maintained that it could not justify increasing appellant's wage since he had just received what amounted to a $1.55 raise per hour for the position he desired only seven months earlier. This justification for the company's failure to give appellant a raise appears to be a credible explanation of a legitimate, nondiscriminatory business decision. This evidence does not tend to infer employment discrimination nor does it present any genuine issues as to material facts which must be resolved.

The affidavits of Messrs. Wolfe and Shaw establish the respective reasons why those two individuals received truck driver positions after appellant had already requested that he be returned to such pursuit. Mr. Wolfe's affidavit explains that prior to his resignation, he expressed his concern to Mr. Robert Nestor, a Jennmar supervisor, that he might not be satisfied with the new job he was taking. The affidavit further provides that Mr. Nestor "informed me that, if necessary, I could reclaim my position at Jennmar at any time within thirty days of my last paid vacation date." Mr. Wolfe's last paid vacation day was April 5, 1985 and he resumed his employment with Jennmar on April 29, 1985. Mr. Shaw's affidavit establishes that he requested a transfer to the position of truck driver in 1983. In response to this request, "Mr. Nestor promised me that I would receive this transfer when a truck driver position came open." Through other evidence, it was established that the truck driver position which Mr. Shaw was transferred into on May 5, 1985, was the first

[1] *See* W.Va.Code § 23–5A–1 (1985).

such opening following Mr. Shaw's request in 1983. Appellant's failure to refute the evidence presented by these affidavits constituted a failure of his burden to demonstrate that these facts were in dispute. As we elucidated in *Burns v. Cities Serv. Co.*, 158 W.Va. 1059, 217 S.E.2d 56 (1975), the mere contention that issues are disputable is not sufficient to withstand a motion for summary judgment. *Id.*, 158 W.Va. at 1065–66, 217 S.E.2d at 60 (quoting *Petros v. Kellas*, 146 W.Va. 619, 630, 122 S.E.2d 177, 183 (1961) (citation omitted)).

The final piece of evidence upon which appellant relied in his attempt to establish discrimination was the company note dated April 4, 1985, concerning Jennmar's inclination to not return appellant to a truck driving position during the pendency of his workers' compensation claim. The circuit court reasoned that even "[a]ssuming the employer's note concerning [appellant] in his worker's compensation establishes an intent to discriminate, it does not prove the fact of discrimination. [Appellant] must prove both the retaliatory motive and the act of discrimination. He must establish the nexus." Appellant failed the critical third part of the *Conaway* test—to establish a causal link between his pursuit of worker's compensation benefits and Jennmar's subsequent refusal to transfer him to a truck driving position. *See*, 178 W.Va. at 170, 358 S.E.2d at 429.

As the United States Supreme Court so aptly reasoned in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), where a party utterly fails "to establish the existence of an element essential to that party's case," summary judgment is not only proper, it is mandatory. *Id.* at 322, 106 S.Ct. at 2552. The Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since the complete failure of proof concerning the essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. at 322–23, 106 S.Ct. at 2552. We are convinced that the circuit court properly determined that appellant failed his critical burden of establishing a causal nexus between the filing of the workers' compensation claim and his subsequent failure to obtain a truck driving position. After appellant's workers' compensation claim was filed in 1979, he continued to work as a truck driver for Jennmar for five years, and left the position only at his own request. The employer obviously regarded the appellant favorably enough to raise the salary level of the night watchman position from $4.50 to $6.05 per hour in order to accommodate his desire to transfer into that position. Under these circumstances, it is difficult to believe that appellant's failure to return to a driver position was motivated by a retaliatory intent. As we recognized in *Conaway*, "[t]o successfully defend against a motion for summary judgment, the plaintiff must make some showing of fact which would support a prima facie case for his claim." 178 W.Va. at 167, 358 S.E.2d at 425, Syl. Pt. 2. Since appellant did not establish the requisite nexus between the workers' compensation claim and the adverse decision, the circuit court correctly concluded that summary judgment was mandatory with respect to the retaliatory conduct cause of action under the reasoning set forth in *Celotex. See* 477 U.S. at 322–23, 106 S.Ct. at 2552.

■ Just as he failed to establish a requisite element of the retaliatory conduct claim, appellant similarly failed to prove a cardinal element of his handicap claim. As this Court established in *Ranger Fuel Corp. v. West Virginia Human Rights Comm'n*, 180 W.Va. 260, 376 S.E.2d 154 (1988), "[a] handicapped person claiming

employment discrimination under *W.Va. Code,* 5–11–9 [1981], must prove as a *prima facie* case that such a person (1) meets the definition of 'handicapped,' (2) possesses the skills to do the desired job with reasonable accommodations and (3) applied for and was rejected for the desired job." *Id.* 180 W.Va. at 262, 376 S.E.2d at 156, Syl. Pt. 2, in part. Appellant never offered any evidence to demonstrate that he meets the definition of a "handicapped" individual within the meaning of W.Va.Code § 5–11–3(t)(1) (1990). That statutory provision defines the term "handicap" as a "person who: (1) Has a mental or physical impairment which substantially limits one or more of such person's major life activities." *Id.* As the circuit court correctly reasoned, "Based on his back surgery for disc removal, [appellant] obviously has an orthopedic impairment.[2] Nonetheless, this does not negate the requirement that he show such physical handicap substantially limits his major life activities."

■ Appellant relies solely on the issuance of the 15% PPD award for his back injury to argue that he is in fact handicapped. A disability award by an administrative agency does not in itself constitute a physical impairment which substantially limits an individual's major life activity and thereby renders the individual handicapped within the meaning of W.Va.Code § 5–11–3(t). *See Wimbley v. Bolger,* 642 F.Supp. 481 (W.D.Tenn.1986), *aff'd,* 831 F.2d 298 (6th Cir.1987) (fact that employee had 30% service-connected disability under Veteran Administration standards does not automatically render individual "handicapped employee").

Appellant proffered neither affidavits nor any other type of evidence that the physical impairment arising from his back injury "substantially limits" one or more of his "major life activities." In fact, the evidence presented suggests quite the contrary. When he was deposed, appellant testified that his back did *not* prohibit him

from driving trucks for a subsequent employer. Appellant also produced a letter dated April 19, 1985, from his doctor stating that it was "reasonable for him to resume his prior position as a truck driver." None of this evidence suggests in any way that appellant's back injury was sufficient to "substantially limit" any major life activity. Appellant clearly failed to meet even the first part of his burden to establish a prima facie case of handicap discrimination. *See Ranger Fuel,* 180 W.Va. at 262, 376 S.E.2d at 156, Syl. Pt. 2, in part. Accordingly, we affirm the circuit court's granting of summary judgment on the handicap cause of action as there is undeniably no issue of material fact regarding whether appellant was discriminated against on the basis of handicap.

Based on the foregoing, the decision of the Circuit Court of Preston County is hereby affirmed.

Affirmed.

---

**2.** As we recognized in *Ranger Fuel,* the term "physical or mental impairment" as it appears in W.Va.Code § 5–11–3(t) is defined to include: "such diseases and conditions as orthopedic, visual, speech and hearing impairments, ...." 180 W.Va. at 264, 376 S.E.2d at 158 (quoting W.Va.C.S.R. § 77–1–2.4 (effective August 1, 1982)).