421 S.E.2d 46

**Silva TEETS, Plaintiff Below, Appellant,**

v.

**EASTERN ASSOCIATED COAL CORPORATION, FEDERAL NO. 2, Defendant Below, Appellee.**

**No. 20476.**

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1992.

Decided July 17, 1992.

---

James A. McLaughlin, McLaughlin and Curry, Fairmont, for appellant.

Gene W. Bailey, II, Jackson & Kelly, Charleston, for appellee.

PER CURIAM:

Silva A. Teets appeals from an adverse ruling entered by the Circuit Court of Marion County granting summary judgment to Mrs. Teets' employer, Eastern Associated Coal Corporation, Federal No. 2 ("East-

ern") in an employment discrimination suit. Having reviewed the record in this case, we conclude that the trial court erred in granting summary judgment because genuine issues of material fact are unresolved in the record. Therefore, this case is reversed and remanded to the Circuit Court of Marion County for further proceedings.

Mrs. Teets was hired by Eastern in 1975. After a ninety-day training period, she began work on a "timber crew." This job entailed building cribs, carrying cribs, laying water pipes and rock dusting the belt line in the mine.

After working on the timber crew for a year, Mrs. Teets bid on and received a job as a "boom man." A boom man position requires a person to operate tipple controls within the mine, and to load coal from the tipple into cars. During "down" periods, a boom man shovels the belt or the belt line and cleans up excess coal from the tipple.[1] Mrs. Teets is only five feet tall. The ceiling height in the mines was usually a foot over her head, and she did not have to squat when working. At various other times she also ran a supply motor and a rock duster.

On February 23, 1983, while employed as a boom man, Mrs. Teets suffered a back injury.[2] Despite this injury, Mrs. Teets decided to finish out her shift. She filled out an "accident report" after her shift ended, and in spite of back and leg pain, attempted to work for several days following the injury. On the morning of March 1, 1983, Mrs. Teets could not get out of bed and had to be transported to a nearby hospital. She then came under the care of Dr. Stemple.

Dr. Stemple prescribed a back brace for Mrs. Teets, which she wore for six months. During that period, Mrs. Teets was hospitalized and ordered to undergo complete bed rest for four or five days. The Workers' Compensation Fund subsequently determined that Mrs. Teets had sustained a compensable injury and she was granted temporary total disability payments. The Workers' Compensation Fund authorized surgery on Mrs. Teets' back to be performed by Dr. Stemple. Surgery was performed on December 5, 1983.

Following the surgery, Mrs. Teets underwent a period of recovery that lasted almost one year. Dr. Stemple released her to return to her former job as a boom man in December, 1984. Dr. Stemple did not tell Mrs. Teets that she would suffer any limitations to her physical abilities due to her back injury. To the contrary, Dr. Stemple told Mrs. Teets that her back should be as good as new, and that it should be as strong as it was before the injury. He did inform Mrs. Teets that she may experience back pain if she engaged in long sittings or leaned over for an extended period.

When Mrs. Teets attempted to return to work, she was informed by Eastern that she was required to undergo a physical examination by Dr. Dollison before she could return to her old job. Dr. Dollison raised and lowered her legs and asked Mrs. Teets how she felt. She told him that her back sometimes hurt when she drove a standard car, but that she thought she could perform her old job. She also told him that she had no problems lifting a twenty-five pound bag of flour, but she did not know what her limitations were. She also informed Dr. Dollison that her back would begin to hurt if she leaned over or squatted for long periods of time. Dr. Dollison did not report the results of the examination to Mrs. Teets, but she was told by an Eastern representative that she had failed the physical. No report of Dr. Dollison's findings is in the record.

Mrs. Teets informed Eastern that she wanted to protest Dr. Dollison's findings. Eastern then referred Mrs. Teets to Dr. Sidow "in accordance with Article III, Sec-

---

1.  A boom man is required to rock dust the line at times, necessitating carrying fifty-pound bags of rock dust. A boom man is also required to fetch and carry as many as four "skids" at a time, each weighing ten pounds, for distances up to one-half of a mile, several times a day.

2.  Mrs. Teets had previously injured her back in approximately 1978. No surgery was required at that time, but she missed about one month of work. At another point in time Mrs. Teets strained muscles in her back and missed nine days of work.

tion (j) of the National Bituminous Coal Wage Agreement of 1984."[3] Dr. Sidow raised both her legs several times, wrote something down, and told her to leave. Dr. Sidow did not discuss the results of his examination with her. No report of Dr. Sidow's findings is in the record.

On January 8, 1985, Mrs. Teets received a letter from Eastern stating, "Based upon the results of the physical examination you are hereby notified that your employment status with Eastern Associated Coal Corp., Federal No. 2 Mine has this date been terminated."

Mrs. Teets states that at the time she was terminated she "couldn't lean over too good, and [she] couldn't squat and [she] was having a lot of pain in [her] leg," all related to her back problem. She was not certain whether she could do all the requirements of her job, but was willing to try. She further states that, at the time of her August 7, 1989 deposition, she had no handicap and, "There isn't much I can't do. I mean, I've tried—I can do about anything."

Subsequent to her termination, Mrs. Teets was awarded a 15% permanent partial disability (PPD) award by the Workers' Compensation Fund.[4] Her only employment subsequent to her termination by Eastern was in the operation of a small store located in her home for a one-year period. Her tasks were operating the cash register and pricing goods. The store, owned jointly by Mrs. Teets and her husband, failed after one year. She also inquired about jobs with Murphy's and Foodland in Waynesburg, Pennsylvania, but was not considered for employment because they were not hiring at the time.

After her termination, Mrs. Teets did not file a grievance against Eastern through her union or with the West Virginia Human Rights Commission because her inquiries into those possibilities were untimely. She initiated this action with a complaint filed in the Circuit Court of Marion County in 1986. Eastern thereafter filed a motion to dismiss which was denied by order entered March 17, 1989. That order permitted Mrs. Teets to amend her complaint "to bring her suit under the auspices of the West Virginia Human Rights Act, *W. Va. Code*, § 5–11–1 *et seq.*" After Mrs. Teets filed her amended complaint, Eastern made a second motion to dismiss and a motion for summary judgment. The motion for summary judgment contended that Mrs. Teets had failed to establish a *prima facie* case of handicap discrimination because she is not a handicapped person as defined by the Human Rights Act.[5]

The trial court, by letter opinion to the lawyers for both Mrs. Teets and Eastern, dated March 4, 1991, made the specific finding "that plaintiff has not borne the burden of showing by *prima facie* evidence that she is a handicapped person within the language of the Human Rights Act." The trial court went on to state:

I cannot believe the legislature had in mind a 15% permanent partial back disability when it enacted legislation on behalf of the handicapped, a concept originally espoused by the West Virginia Supreme Court of Appeals in *Coffman v. West Virginia Board of Regents* [182

---

**3.** Mrs. Teets was a union member and subject to the Agreement. The provision in question allows, *inter alia*, for a physical examination by a doctor of (1) employee's choice, (2) employer's choice, and (3) a doctor chosen jointly by the employer and the employee. A majority opinion of the three doctors chosen was to be sufficient to justify termination of an employee for medical reasons over the objection of the employee. Mrs. Teets claims that Eastern chose Dr. Sidow to be the doctor chosen jointly by her and Eastern. In her deposition, she states that her response was, "Well, whatever. So I just went for the physical then."

**4.** The briefs of both Mrs. Teets and Eastern state that Mrs. Teets was awarded a 15% PPD; the record of Mrs. Teets' deposition asserts that she received a 20% PPD award.

**5.** Eastern also contended that even if Mrs. Teets is handicapped, Eastern had no legal duty to reasonably accommodate her condition by transferring her to a light-duty position. Eastern further contended that it had presented a legitimate non-discriminatory reason for Mrs. Teets' discharge. We note that the trial court's rationale for granting summary judgment was based only on the issue of a *prima facie* handicap under the Human Rights Act. We therefore decline to rule on the latter two contentions.

W.Va. 73], 386 S.E.2d 1 (1988) see F.N. #16. The most recent case of *O'Dell v. Jenmar [Jennmar] Corporation of West Virginia, Inc.* [184 W.Va. 280, 400 S.E.2d 288 (1990)], although distinguishable in some particulars, would seem to generally support this proposition. As aptly pointed out by plaintiff's counsel, the plaintiff is indeed ensnared in the typical 'Catch 22' situation—too handicapped to work and yet not handicapped enough to be 'handicapped.' However, the obvious and appropriate relief available to her, protesting her discharge, was forfeited by her through her own inaction. Creating another vehicle of relief through a liberal and creative interpretation of an act meant to protect the truly handicapped is not, in my opinion, appropriate.

The trial court then entered an order on April 9, 1991 granting Eastern's motion for summary judgment in accordance with the March 4, 1991 letter opinion. This appeal followed.

■ Eastern moved for summary judgment based upon Rule 56 of the *W.Va. R.Civ.P.*[6] The standard for granting such a motion was enunciated by this Court in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." We have also stated:

The burden on a motion for summary judgment is not upon the non-moving party to show that he has developed facts which would allow him to prevail if

this case was submitted to a jury. The burden is on the moving party to show that there is no genuine issue as to any material fact in the case.

*Lengyel v. Lint*, 167 W.Va. 272, 280, 280 S.E.2d 66, 71 (1981). Because there are obvious issues of material fact yet to be resolved in this case, the order of the trial court must be reversed.

■ In *Ranger Fuel Corp. v. Human Rights Comm'n*, 180 W.Va. 260, 376 S.E.2d 154 (1988), we enunciated the standard a handicapped person must reach in order to prove a *prima facie* case of employment discrimination under *W.Va.Code*, 5–11–9 [1981]. In syllabus point 2, we stated:

A handicapped person claiming employment discrimination under *W.Va. Code*, 5–11–9 [1981], must prove as a *prima facie* case that such a person (1) meets the definition of 'handicapped,' (2) possesses the skills to do the desired job with reasonable accommodations and (3) applied for and was rejected for the desired job. The burden then shifts to the employer to rebut the claimant's *prima facie* case by presenting a legitimate, nondiscriminatory reason for such person's rejection. An example of such a legitimate, nondiscriminatory reason is that a person's handicap creates a reasonable probability of a materially enhanced risk of substantial harm to the handicapped person or others.

It is uncontradicted that Mrs. Teets applied for and was rejected for the desired job. By her deposition testimony she has asserted that she possessed the skills to do the desired job at the time of her termination. The question before us on appeal is whether Mrs. Teets meets the definition of "handicapped."[7]

---

6. Rule 56(b) states:
    (b) *For defending party.*—A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
    Rule 56(c) states, in pertinent part:
    (c) *Motion and proceedings thereon.*— ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

7. The trial court also noted that the appellant failed to pursue her remedies under the National Bituminous Coal Wage Agreement of 1984, but this is not the trial court's rationale for granting summary judgment. In fact, the trial court specifically allowed the appellant to

The foundation of the trial court's rationale in granting summary judgment is its belief that the West Virginia legislature did not "have in mind" a 15% PPD award when it enacted legislation on behalf of the handicapped. The trial court opined that our decision in *O'Dell v. Jennmar Corporation of West Virginia, Inc.,* 184 W.Va. 280, 400 S.E.2d 288 (1990) generally supported such a belief. The trial court has misinterpreted our holding in *O'Dell.*

■ In syllabus point 4 of *O'Dell* we stated: "A disability award by an administrative agency does not in itself constitute a physical impairment which substantially limits an individual's major life activity and thereby renders the individual handicapped within the meaning of W.Va.Code § 5–11–3(t) (1990)." Apparently, the trial court relied on syllabus point 4 of *O'Dell* when it determined that Mrs. Teets' 15% PPD award for her back injury did not constitute a handicap actionable under *W.Va. Code,* 5–11–1, *et seq.* Clearly, however, syllabus point 4 of *O'Dell* is not determinative of this issue. We merely stated that a PPD award *"does not in itself* constitute a physical impairment which substantially limits an individual's major life activity...."[8] (emphasis added). Our holding in *O'Dell,* far from limiting the definition of "handicapped" as used in *W.Va. Code,* 5–11–3(t),[9] merely precluded an *automatic* determination of "handicap," as defined in *W.Va. Code,* 5–11–3(t) [1981], based upon

the grant of a disability award by an administrative agency.

■ The lone question this Court must answer in this appeal is whether or not Mrs. Teets has presented evidence that her back injury substantially limits one or more of her major life activities. Title 77 of the *West Virginia Code of State Rules* (1982) provides interpretative rules regarding the definitions of terms included in *W.Va. Code,* 5–11–3 [1981].[10] 6 W.Va.C.S.R. § 77–1–2.5 defines: " 'Major Life Activities' [as including] communication, ambulation, self-care, socialization, learning, vocational training, *employment,* transportation and adapting to housing." (emphasis added). 6 W.Va. C.S.R. § 77–1–2.6 states:

'Substantially Limits' means interferes with or affects over a substantial period of time. Minor temporary ailments or injuries shall not be considered physical or mental impairments which substantially limit a person's major life activities. Examples of minor temporary ailments are colds or flu, or sprains or minor injuries.

The "major life activity" Mrs. Teets claims was "substantially limited" by her physical impairment is employment.

Although we have never articulated the standard by which one may be determined to be substantially limited in a major life activity, other jurisdictions with similar statutes and definitions of "handicapped" have examined this specific issue. The

---

amend her claim so that it would be viable under *W.Va.Code,* 5–11–1, *et seq.*

**8.** In *O'Dell,* an employee who had been awarded a 15% PPD award by the Workers' Compensation Fund relied solely on the issuance of his award to substantiate his argument that he was handicapped under *W.Va.Code,* 5–11–3. *O'Dell,* 184 W.Va. at 285, 400 S.E.2d at 293. We noted that the employee therein did not offer any evidence that "the physical impairment arising from his back injury 'substantially limits' one or more of his major life activities.' In fact, the evidence presented [suggested] quite the contrary." *Id.,* 184 W.Va. at 285, 400 S.E.2d at 293.

**9.** Syllabus point 4 of *O'Dell* cites § 5–11–3(t) [1990]. This case falls under the earlier version of § 5–11–3 enacted in 1981. Although there are substantial differences between the two en-

actments of *W.Va.Code,* 5–11–3, the 1981 statute is equivalent to the 1990 enactment insofar as syllabus point 4 of *O'Dell* is concerned.

**10.** This Court notes that in *Chico Dairy Company Store No. 22 v. West Virginia Human Rights Commission,* 181 W.Va. 238, 382 S.E.2d 75 (1989), we invalidated 6 *W.Va.Code of State Rules* § 77–1–2.7 because the rule was a "legislative rule" pursuant to *W.Va.Code,* 29A–1–2(d) which had not been submitted to the legislative rule-making review committee for its approval, as required by *W.Va.Code,* 29A–3–9 to 29A–3–14, as amended. *See* syl. pt. 1, *Chico Dairy.* 6 W.Va.C.S.R. § 77–1–2.5 and 2.6 are "interpretative rules" rather than "legislative rules," and we therefore consider them in this case.

The 1982 version of Title 77 was repealed in 1991 and replaced with interpretations of the newly constructed *W.Va.Code,* 5–11–3 [1989].

Fourth Circuit Court of Appeals, reviewing substantially similar language contained in 29 U.S.C. § 706(7),[11] has discussed the issues raised in the instant case:

The question of who is a handicapped person under the Act is best suited to a 'case-by-case determination,' *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1100 (D.Hawaii 1980), as courts assess the effects of various impairments upon varied individuals. The definitional task cannot be accomplished merely through abstract lists and categories of impairments. The inquiry is, of necessity, an individualized one—whether the particular impairment constitutes for the particular person a significant barrier to employment.... 

[T]he very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment. *Jasany v. United States Postal Service,* 755 F.2d [1244] at 1249 [ (6th Cir.1985) ].[12]

*Forrisi v. Bowen,* 794 F.2d 931, 933–34 (4th Cir.1986). *See also Probasco v. Iowa Civil Rights Commission,* 420 N.W.2d 432 (Iowa 1988); *Fields v. Lyng,* 705 F.Supp. 1134 (D.Md.1988); *Carty v. Carlin,* 623 F.Supp. 1181 (D.Md.1985); *Salt Lake City Corp. v. Confer,* 674 P.2d 632 (Utah, 1983).

It is clear from the foregoing discussion that a determination of whether or not an individual suffers from a physical impairment which substantially limits one or more major life activities requires a more exhaustive inquiry than simply categorizing the amount of PPD awarded to an employee by an administrative agency. "Relevant to the inquiry are 'the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training.'" *Forrisi* at 933, quoting *Jasany* at 1249.

In this case the employee missed almost two years of work due to a back injury requiring surgery and subsequent rehabilitation. Although no medical reports of substance are in the record, Mrs. Teets has stated that at the time of her discharge she could not lean over very well, could not squat and had significant pain in her leg. Due to this disability she was terminated from her employment at Eastern. Examining this case, as we must, on an individual basis, the fact that Mrs. Teets only significant employment experience [13] involved heavy duty work in the mines shows that her back disability could have substantially limited her major life activity of employment. Eastern, upon whom the burden falls of showing that no genuine issue of fact exists, has thus far presented no evidence to contradict Mrs. Teets' showing that she was substantially limited in her major life activity of working. *See Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987). The trial court relied wholly on the amount of PPD awarded to the appellant when it determined that she was not handicapped. This reliance was erroneous and a broader inquiry is necessary. Therefore, this case, on the state of the record, should not have been decided on a motion for summary judgment. It must be reversed and remanded to the trial court for further proceedings.

Based upon the foregoing, the April 9, 1991 order of the Circuit Court of Marion County is reversed and remanded for fur-

---

11. 29 U.S.C. § 706(7) was redesignated § 706(8) in a 1986 amendment. It states, in pertinent part: "[A "handicapped individual" is] any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities[.]"

12. This discussion of the purposes of the Rehabilitation Act comports with our strict construction of the definition of "handicap" under *W.Va. Code,* 5–11–3(t) [1981]. In syllabus point 3 of *Ranger Fuel, supra,* we stated:

The definition of 'handicap' as specified in *W.Va.Code,* 5–11–3(t) [1981], must be strictly construed in order to assist individuals with substantial handicaps in achieving employment; a strict construction allows proper accommodation of the interests of handicapped individuals, other employees, the employer and the public.

13. Mrs. Teets worked in the mines for eight years. Her only prior employment was a three-day stint as a popcorn seller at Hills in 1973.

ther proceedings consistent with this opinion.

Reversed and remanded.

BROTHERTON, J., dissents and would affirm the trial court.