481 S.E.2d 498

The PUTNAM COUNTY BOARD
OF EDUCATION, Petitioner
Below, Appellee

v.

Joyce ANDREWS, Respondent
Below, Appellant.

No. 23288.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 24, 1996.

Decided Dec. 19, 1996.

James Allan Colburn, Baer, Colburn &
Morris, Huntington, Counsel for Appellee.

Larry Harless, Cockeysville, Maryland, for
Appellant.

PER CURIAM:

Joyce Andrews appeals [1] from a decision of
the Circuit Court of Putnam County, which
denied her grievance requesting four years
of administrative seniority for service as an
educational diagnostician in the central office
of the Putnam County Board of Education.

---

1. The Honorable Arthur M. Recht resigned as
Justice of the West Virginia Supreme Court of
Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of
West Virginia, appointed him Judge of the First
Judicial Circuit on that same date. Pursuant to
an administrative order entered by this Court on
October 15, 1996, Judge Recht was assigned to
sit as a member of the West Virginia Supreme
Court of Appeals commencing October 15, 1996,
and continuing until further order of this Court.

Ms. Andrews asserts that the circuit court erred in reversing a favorable decision by the Administrative Law Judge, and requests an award of reasonable attorney's fees and costs. For the reasons set out below, we affirm.

The Appellant, Joyce Andrews, has been employed by the Respondent, Putnam County Board of Education ("the Board") since 1974. She was first a special education resource room teacher at Rock Bridge Elementary from 1974 to 1978, then worked in the Respondent's central office from 1978 to 1988. Her title in the central office was originally "behavior disordered itinerant teacher," but was changed to "educational diagnostician" sometime during the 1985–1986 school year. In 1988, she became principal of Hometown Elementary School, and at the time of these proceedings spent half her time as principal and half as a teacher.

In March 1992, the Appellant initiated a grievance in accord with West Virginia Code § 18–29–4 (1994), seeking four years of administrative seniority for time served in the central office as an educational diagnostician. In a letter to Superintendent Sam Sentelle, Ms. Andrews asserted that the duties she performed during this time fell within the statutory definition of "central office administrator" or "supervisor" in Code section 18A–1–1(c)(3) & (4) (1993), rather than "classroom teacher" in section 18A–1–1(c)(1). Superintendent Sentelle denied this request, and Ms. Andrews appealed.

A Level II hearing was held before Superintendent Sentelle on August 19, 1992. During the hearing, the Appellant testified that her duties as an educational diagnostician in the central office were primarily to do testing and to chair Placement Advisory Committee (PAC) meetings.[2] When chairing a PAC meeting, she signed papers as the superintendent's designee. In addition to these duties, the Appellant testified that she per-formed several duties that she considered administrative in nature, although she did not assert that these duties occupied a majority of her time. The Appellant stated that she coordinated selection of special education textbooks, including writing the selection policy and placing the orders, trained new educational diagnosticians and observed them in the classroom for purposes of evaluation, was involved in developing the Putnam County Special Education Curriculum Guide, helped teachers who needed improvement, and did one semester of on-the-job supervision of student teachers. There was no attempt to quantify what percentage of time Ms. Andrews spent performing her primary duty of testing students and what percentage of time she spent on the duties asserted to be administrative in nature. The Appellant did admit that much of the work with textbooks and curriculum was accomplished during additional summer employment approved by the Board, and not pursuant to her regular employment. She worked under a teacher's contract for 200 days per year, and was paid at her daily rate for the summer work performed outside the contract. The Board also paid her an additional amount for each PAC meeting she chaired. This practice was initiated after Ms. Andrews brought it to the Board's attention that the person who had primary responsibility for chairing PAC meetings was paid more than she was.

Also at the Level II hearing, the Board presented the testimony of Harold Hatfield, an administrator in the Putnam County Schools. An educational diagnostician, according to Mr. Hatfield, conducts testing of students for learning disabilities, behavior disorders, or other special needs, then participates in a PAC meeting to make a recommendation and develop an educational plan for each child tested.[3] He said that educational diagnosticians are paid a teacher's salary scale, they do not supervise other

---

2. A PAC meeting was later described as a meeting in which the educational diagnostician presents the results of educational testing to the parents, the classroom teacher, and the school administrator, after which the educators and parents develop a plan called an Individual Education Plan (IEP) that meets the student's special educational needs.

3. Also helpful is the definition given in *Smith v. Logan County Board of Education*, No. 91–23–291 (Oct. 29, 1991), slip op. at 1–2: "The primary responsibility stated in the posting [for an educational diagnostician position] was to 'provide direct testing of all exceptional students and initial referrals.'"

employees, and they are not required to have administrative certification. Mr. Hatfield also testified that the school principal generally is the administrator present at PAC meetings. He reported that teachers often perform most or all of the duties asserted by the Appellant as administrative in nature, including chairing PAC meetings, helping to train new teachers, and serving on textbook selection committees, budget committees, and personnel committees. It is also common, he said, to hire teachers to write curriculum or perform other duties on an as-needed basis during summer vacations.

After the Level II hearing, Superintendent Sentelle again denied the Appellant's grievance, saying that Ms. Andrews was employed as a teacher, albeit a specialized one, and was not given administrative authority sufficient to render her a de facto administrator. Ms. Andrews sought Level III review, and the Board waived its right to a hearing at that level. The Appellant then requested that her grievance be submitted to a hearing examiner pursuant to Code section 18–29–5 (1994).

The case was submitted without an additional hearing to an Administrative Law Judge ("hearing examiner" or "ALJ"), who ruled in the Appellant's favor.[4] He concluded as a matter of law that a diagnostician is not a "classroom teacher," based on an earlier ALJ's opinion concerning which of two special education teachers should fill a new diagnostician position. *See Smith v. Logan County Bd. of Educ.*, No. 91–23–291 (W.Va. Educ. & State Employees Grievance Bd. Oct. 29, 1991). The hearing examiner in the instant case looked to section 18A–1–1(c), which divides professional educators into four categories: classroom teacher, principal, supervisor, and central office administrator. Because Ms. Andrews was not a classroom teacher, the examiner reasoned, by process of elimination she must have been either a supervisor or a central office administrator, either of which would entitle her to administrative seniority.

The Board appealed to the Circuit Court of Putnam County, asserting first that the Administrative Law Judge reached his conclusion without ever determining whether Ms. Andrews had any administrative authority or duties, and second that the Administrative Law Judge's reasoning that all employees who are not classroom teachers must necessarily be administrators was clearly wrong. The circuit court, by opinion dated March 1, 1995, concluded that Ms. Andrews worked as a teacher under a teacher's contract, was not given any administrative authority, and did not supervise or evaluate personnel. The court therefore entered an order, dated April 4, 1995, finding that the decision of the Administrative Law Judge was clearly wrong in view of the record, and reversing it.

■ Ms. Andrews now appeals that decision to this Court, seeking a reversal of the circuit court's order. We first address our standard of review. The Appellant cites syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989): "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." This holding was based on the traditional rule that evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong. *See* 182 W.Va. at 292, 387 S.E.2d at 526–27.

■ The facts as found by the Administrative Law Judge were:

1. Grievant was employed as a diagnostician, based in Respondent's central office, for a period including September 1984—June 1988.

2. Grievant, as diagnostician, was required to hold only a teaching certificate, never administrative or supervisory credentials.

3. Grievant's regular duties notably included overseeing "beginning special edu-

---

4. The Administrative Law Judge's opinion states that the parties submitted the case on "their effective joint stipulation of most pertinent facts, supplemented by limited documentary evidence and their individual fact/law proposal submis- sions." There is no joint stipulation of facts in the record, and we therefore looked to the transcript of the Level II hearing, which has been made a part of the record on appeal.

cation teachers," chairing "special education textbook adoptions" and developing "curriculum materials and manuals."

*Andrews v. Putnam County Bd. of Educ.*, No. 92–40–460 (W. Va. Educ. & State Employees Grievance Bd. Dec. 30, 1992), slip. op. at 9. The Administrative Law Judge's conclusion that the Appellant was entitled to administrative credit for her years as an educational diagnostician, however, was not based on these findings of fact. The decision is based entirely on the Administrative Law Judge's interpretation of West Virginia Code § 18A–1–1 (Supp.1996), as applied to the title "educational diagnostician." Therefore our holding in *Scalia*, which applies to administrative decisions based upon findings of fact, is not applicable. Because the Administrative Law Judge's decision relies on an interpretation of the law, the Circuit Court had the ability to reverse it if it was contrary to law. W.Va.Code § 18–29–7 (1994); *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). For the same reason, our review of the conclusions of law and application of law to the facts is de novo. *Id.* We now proceed to an analysis of whether the Appellant's job as an educational diagnostician entitled her as a matter of law to administrative seniority.

■ Under West Virginia Code § 18A–4–7a, professional school personnel accrue seniority for service in a particular area of employment. Section 18A–4–7a speaks specifically of "classroom teachers," "substitute teachers," and "guidance counselors and all other professional employees ... except classroom teachers." With respect to the latter category, the statute provides that such employees shall gain seniority in their nonteaching area of professional employment, and that for purposes of accruing seniority, employment as a principal, supervisor, or central office administrator shall be considered one area of employment. The issue in this case is whether Joyce Andrews was a "classroom teacher" or a "principal, supervisor, or central office administrator." Thus, we look to the statutory definitions of those terms.

Section 18A–4–7a refers to section 18A–1–1 for the definitions of "classroom teacher,"

"other professional employee," "principal," "supervisor," and "central office administrator." Section 18A–1–1(c)(1) defines "classroom teacher" as "[t]he professional educator who has direct instructional or counseling relationship with pupils, spending the majority of his time in this capacity." "Other professional employee" is defined in section 18A–1–1(d) as a "person from another profession who is properly licensed and is employed to serve the public schools," such as a nurse, and is not therefore applicable the Appellant, who is a professional educator. Ms. Andrews does not assert that she fit the definition of "principal" during the years in question. The two categories determined by the Administrative Law Judge to describe the Appellant's duties were "supervisor," defined in section 18A–1–1(c)(3) as "[t]he professional educator who, whether by this or other appropriate title, is responsible for working primarily in the field with professional and/or other personnel in instructional and other school improvement," and "central office administrator," defined in section 18A–1–1(c)(4) as "[t]he superintendent and other professional educators, whether by these or other appropriate titles, who are charged with the administering and supervising of the whole or some assigned part of the total program of the county-wide school system."

In addition to the statutory definitions, the Appellant also cites a letter from the State Superintendent of Schools dated May 8, 1992, which states that a "special education specialist and/or coordinator" is considered to be a central office administrator and would earn administrative seniority according to Code section 18A–4–7a. Although interpretations of the State Superintendent of Schools are entitled to great weight unless clearly erroneous, *Smith v. Board of Educ.*, 176 W.Va. 65, 70–71, 341 S.E.2d 685, 690 (1985), this particular interpretation does not address a situation sufficiently similar to the case at hand to be helpful. The letter concerns a "special education specialist and/or coordinator." Ms. Andrews was an "educational diagnostician." The Appellant presented no evidence to support the conclusion that these positions are the same, and the Superintendent's letter does not describe the duties of the special education specialist submitting

the request. Harold Hatfield testified at the Level II hearing that Kanawha County employed special education specialists, whose duties differed from those of educational diagnosticians in that they worked on an extended contract and were required to write policy and conduct continuing education. On this basis, we do not find the Superintendent's interpretation regarding a special education specialist or coordinator to apply to the Appellant.

A more helpful interpretation, also issued by the State Superintendent of Schools, dated December 9, 1991, concerns whether work as a school psychologist was "supervisory" and would earn administrative seniority. There, the Superintendent described the duties of the school psychologist, which have notable similarity to many of the duties the Appellant performed: observing in classrooms and suggesting more effective teaching strategies; conferring with teachers regarding academic needs and making suggestions for remediation; participating in PAC meetings; helping teachers set up behavior modification programs for the classroom; giving presentations to state professional educator meetings, teacher workshops, parent groups, and graduate students in education; serving on curriculum committees; and developing intervention strategies for disruptive students. In that case, the Superintendent concluded that work as a school psychologist did not earn administrative seniority. The letter emphasizes that the psychologist did not supervise or evaluate other personnel, did not possess an administrative certificate and did not have administrative pay status.[5]

Next we examine the decision of the West Virginia Education and State Employees Grievance Board in *Smith v. Logan County Board of Education*, No. 91–23–291 (Oct. 29, 1991), upon which the Administrative Law Judge in this case relied.[6] The issue in *Smith* was which of two applicants was more qualified to fill a newly created educational diagnostician position. The Code requires county boards of education to hire both classroom teachers and other professional personnel "on the basis of the applicant with the highest qualifications." W.Va. Code § 18A–4–7a (1991).[7] In determining the highest qualifications, the statute makes a distinction between classroom teachers and other professional personnel.[8] The ALJ concluded that the more flexible test from syllabus point three of *Dillon v. Board of Educ.*, 177 W.Va. 145, 351 S.E.2d 58 (1986), applied to the hiring of the educational diagnostician in that grievance, rather than the statutory standard. In so holding, the hearing examiner summarily stated that a diagnostician is not a classroom teaching position. In support of this statement, the ALJ cited authority for the proposition that words should be given their plain meaning whenever possible. *See e.g., Meadows v. Hey*, 184 W.Va. 75, 80 n. 9, 399 S.E.2d 657, 662 n. 9 (1990). Presumably the hearing examiner reasoned that because a diagnostician does not have a separate "classroom" she does not occupy a "classroom teaching position."[9]

The case before us highlights the problem with that conclusion. Because section 18A–1–1 has only four categories of professional educators—classroom teacher, principal, supervisor, and central office administrator—each professional employee must fall within

---

5. With regard to whether Ms. Andrews supervised other personnel, she testified at the Level II hearing that she worked on the first teacher improvement plan in the county, spending anywhere from three days to several weeks intermittently providing technical assistance, including observation, to teachers on improvement plans. (Tr. 24). She also testified that she provided on-the-job supervision or observation of three special education student teachers for one semester. On cross-examination, however, the Appellant retreated from these assertions, saying that her function was to observe and fill out observation forms to be used by her supervisor in evaluating the other employees. (Tr. 56–57).

6. While one ALJ may look to another's decisions for guidance, it is important to note that the administrative decisions are not binding on other administrative law judges.

7. *Smith* was decided prior to the 1992 amendment of § 18A–4–7a, effective March 3, 1992, which rewrote the first paragraph of the statute, among other changes.

8. This is true of both the current statute and the statute in effect when *Smith* was decided.

9. We discuss the administrative opinion in *Smith* only as it relates to the case before us. *Smith* is not before this Court, and our opinion does not affect that case in any way.

one of these categories for purposes of seniority.

Returning to the definition of "classroom teacher" in section 18A–1–1(c)(1), the statutory definition does not focus on the "classroom" aspect, but rather on the relationship between the employee and students: " 'Classroom teacher': The professional educator who has direct instructional or counseling relationship with pupils, spending the *majority* of his time in this capacity" (emphasis added). The definitions of both · "classroom teacher" and "supervisor" refer to how the educator spends the *majority* of his or her time, or what his or her *primary* responsibilities are. Although Ms. Andrews asserted that a number of her duties in the central office were administrative in nature, she also testified that she spent the *majority* of her time working directly with students (administering tests) and chairing PAC meetings at which the results of these tests were presented and suggestions based on their results were implemented. It is therefore the opinion of this Court that Ms. Andrews was a "classroom teacher" as defined in West Virginia Code § 18A–1–1(c)(1).[10] This conclusion is bolstered by the testimony of Mr. Hatfield, who said that the Appellant was hired under a teacher's contract to administer tests to students, to analyze the results, and to make a recommendation for appropriate placement.

Although Ms. Andrews' duties may not on first glance fit comfortably within the definition of "classroom teacher," it is clear that the definition focuses on the duties or work performed, rather than the location of the performance. Furthermore, a review of the alternatives reinforces our conclusion. A "supervisor" is defined by the statute as one who "whether by this or other appropriate title, is responsible for working primarily in the field with professional and/or other personnel in instructional and other school improvement." W. Va.Code § 18A–1–1(c)(3). Ms. Andrews' primary work was with students, even though she was involved in many administrative interactions with other school personnel. Neither does the record indicate that, prior to becoming a principal, she was a

"central office administrator," "charged with the administering and supervising of the whole or some assigned part of the total program of the county-wide school system." W.Va.Code § 18A–1–1(c)(4). It is apparent from the record that during the period in question the Appellant took assignments from and reported to a supervisor, Mrs. Francis, who was the Director of Special Education. If anyone were assigned the duty of administering the whole or a part of the special education segment of the county-wide school system, it was more likely Mrs. Francis than the Appellant.

Our finding that Ms. Andrews's primary function was to administer tests to students is not inconsistent with the Administrative Law Judge's finding that her regular duties included overseeing beginning special education teachers, chairing special education textbook adoptions, and developing curriculum materials and manuals. Mr. Hatfield testified that classroom teachers frequently perform such functions, and that some of these duties were performed under special summer contracts. It does not appear from the record that Ms. Andrews spent the majority of her time on these matters. Furthermore, the Appellant's testimony that much of the textbook and curriculum work was accomplished outside her regular job as an educational diagnostician for extra pay indicates that these were not part of the job for which she was hired, but rather extra duties that she volunteered to perform on a separate basis.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Putnam County, and we deny the Appellant's request for attorney's fees. *See* W.Va.Code § 18–29–8 (1994).

Affirmed.

RECHT, J., sitting by temporary assignment.

---

**10.** This Court reached a similar conclusion in *State ex rel. Boner v. Kanawha County Bd. of Educ.,* 197 W.Va. 176, 475 S.E.2d 176 (1996), wherein we held that a homebound teacher (who has no classroom) is a "teacher" within the meaning of West Virginia Code §§ 18–1–1(g) (1994) and 18A–2–2 (1993).