527 S.E.2d 802

**Eva Diane MAIKOTTER, Petitioner/Appellant Below, Appellant,**

v.

**UNIVERSITY OF WEST VIRGINIA BOARD OF TRUSTEES/WEST VIRGINIA UNIVERSITY, Respondent/Appellee Below, Appellee.**

**No. 26110.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1999.

Decided Dec. 14, 1999.

Davis, J., filed separate opinion, concurring in part and dissenting in part.

Kathleen Abate, Esquire, Cohen, Abate & Cohen, Fairmont, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Kristi A. Rogucki, Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

McGRAW, Justice:

An employee appeals a lower court decision denying her grievance regarding a promotion. Appellant employee argues that W. Va.Code § 18B–7–1(d)(1995)[1] required the employer to hire her before looking outside the institution for other applicants for a posted position. Appellee West Virginia University maintains that the statute's application is limited to certain types of job openings. The employee, Eva Diane Maikotter, appeals the decision of the Circuit Court of Kanawha County, in which the lower court upheld an

---

1. The year 1995 is used because this is the version of the statute in effect at the time of the controversy. The Legislature made minor amendments to W. Va.Code § 18B–7–1 in 1997 and 1999, but these changes are irrelevant to Ms. Maikotter's grievance.

administrative decision in favor of West Virginia University.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Eva Diane Maikotter worked as a cashier at the State 4–H conference center at Jackson's Mill ("Jackson's Mill"), located in Lewis County, West Virginia. Because appellant West Virginia University ("WVU") operates the Jackson's Mill facility, appellant Maikotter was an employee of West Virginia University. Ms. Maikotter was considered a "classified, nonexempt" employee.[2]

In May of 1996, Ms. Maikotter applied for the position of Building Services Supervisor for Jackson's Mill, which was considered a "classified, exempt" (essentially salaried) position. Those making the hiring decision rejected appellant in favor of an individual who was not an employee of WVU. Ms. Maikotter subsequently filed a grievance pursuant to 18–29–1 et seq. (1992). In her grievance, Ms. Maikotter alleged that W. Va.Code § 18B–7–1(d) obligated WVU to hire qualified, "classified, nonexempt" (essentially hourly) employees like Ms. Maikotter, if any applied, before looking outside the institution for new hires.

In the ensuing administrative proceeding, WVU argued that it was not obligated to hire Ms. Maikotter over the "outside" individual because Ms. Maikotter was a "nonexempt" (essentially, hourly) employee, and the position in question was a so-called "exempt" (essentially, salaried) position. WVU argued that, based upon its own Board of Trustees Procedural Rule,[3] the statute in question is limited to "nonexempt" employees who apply for "nonexempt" positions. Because the supervisor's job was an "exempt" position, W. Va.Code § 18B–7–1(d) did not control, and WVU had no obligation to hire Ms. Maikotter before looking outside the institution for another applicant.

2. The term "classified" is used by WVU to refer to those employees who are neither faculty or policy makers for the university. The term "exempt" implies that an employee has a salaried, rather than hourly, position, and is therefore

The Administrative Law Judge ("ALJ") assigned to the case agreed with WVU's position, and found in an order dated May 30, 1997, that Ms. Maikotter had not established that WVU's interpretation of W. Va.Code § 18B–7–1(d) "exceeded its constitutional or statutory authority, was arbitrary and capricious, or otherwise improper." In an order entered January 27, 1999, the Circuit Court of Kanawha County affirmed the ALJ. It is Ms. Maikotter's appeal of this order that is before us today, in which she requests placement in the contested position, back pay, and costs and attorney fees.

Ms. Maikotter argues that W. Va.Code § 18B–7–1(d) is plain and unambiguous, contains no language limiting its reach to "nonexempt" employees applying for "nonexempt" positions, and that the WVU Board of Trustees' rule is a misstatement of the law. Consequently, she argues, both the ALJ and the lower court erred by determining that the agency rule supersedes the statute. We agree with Appellant Maikotter, and for the reasons set forth, reverse.

## II.

### STANDARD OF REVIEW

■ We have held that we usually follow the guidance of the West Virginia Educational Grievance Board:

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code, 18–29–1, et seq. (1985), and based upon findings of fact, should not be reversed unless clearly wrong.

Syl. pt. 1, *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989). However, every final order contains both findings of fact and conclusions of law.

In *Scalia,* we compared the standard of review for a hearing examiner's findings of

exempt from the wage and hour law requirements regarding overtime pay.

3. That rule, quoted in full, *infra,* may be found at W. Va.C.S.R. tit. 128 § 31–5.1 (1996).

fact under W. Va.Code § 18–29–7 (1985),[4] with the standard of review of an administrative decision under the Administrative Procedure Act, W. Va.Code § 29A–5–4(g):

> Both statutes contain virtually the same criteria for reversal of the factual findings made at the administrative level, i.e., that they are "clearly wrong in view of the reliable, probative and substantial evidence on the record as a whole." We have traditionally expressed this rule in an abbreviated fashion: Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong.

*Scalia,* 182 W.Va. at 292, 387 S.E.2d at 527.

But as we have recognized in similar contexts, we draw a distinction between questions of fact and questions of law. We have addressed this distinction in the context of another administrative proceeding when we have examined decisions made by the Board of Review of the West Virginia Department

of Employment Security. With regard to such cases we have held:

> [T]his Court has observed that the findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the courts is *de novo.*

*Adkins v. Gatson,* 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994) (citations and internal quotations omitted).

The same logic applies to our review of the instant case.[5] We must separate findings of fact from conclusions of law, and examine the latter in a different light. Although we accord great deference to the findings of fact of the West Virginia Educational Employees Grievance Board, we review, *de novo,* questions of law.

---

4. The entire section reads:

> The decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Such appeal shall be filed in the circuit court of Kanawha County or in the circuit court of the county in which the grievance occurred within thirty days of receipt of the hearing examiner's decision. The decision of the hearing examiner shall not be stayed, automatically, upon the filing of an appeal, but a stay may be granted by the circuit court upon separate motion therefor.
>
> The court's ruling shall be upon the entire record made before the hearing examiner, and the court may hear oral arguments and require written briefs. The court may reverse, vacate or modify the decision of the hearing examiner or may remand the grievance to the chief administrator of the institution for further proceedings.

W. Va.Code § 18–29–7 (1985).

5. A recent *per curiam* opinion contains an extensive list of the cases that reveal this logic:

> In *Quinn v. West Virginia Northern Community College,* 197 W.Va. 313, 475 S.E.2d 405 (1996), this Court confirmed the principle expressed in syllabus point 1 of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989), that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." See also syl. pt. 1, *Bolyard v. Kanawha County Board of Education,* 194 W.Va. 134, 459 S.E.2d 411 (1995); syl. pt. 1, *Ohio County Board of Education v. Hopkins,* 193 W.Va. 600, 457 S.E.2d 537 (1995); syl. pt. 3, *Lucion v. McDowell County Board of Education,* 191 W.Va. 399, 446 S.E.2d 487 (1994); syl. pt. 1, *Department of Natural Resources v. Myers,* 191 W.Va. 72, 443 S.E.2d 229 (1994); syl. pt. 1, *Department of Health and Human Resources v. Blankenship,* 189 W.Va. 342, 431 S.E.2d 681 (1993); W. Va.Code, 18–29–7 [1985].
>
> That principle is, of course, consistent with our observation that rulings upon questions of law are reviewed *de novo. State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994); *Adkins v. Gatson,* 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994); *State v. Stuart,* 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994); syl. pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994). *Board of Educ. of County of Wood v. Johnson,* 201 W.Va. 425, 428–29, 497 S.E.2d 778, 781–82 (1997).

## III.

## DISCUSSION

■ At issue in the case, *sub judice,* is whether the WVU Board of Trustees' rule, relied upon by the appellee, is a permissible interpretation of W. Va.Code § 18B-7-1(d). First we set forth the language of the statute:

(d) **A nonexempt classified employee,** including a nonexempt employee who has not accumulated a minimum total of one thousand forty hours during the calendar year or whose contract does not extend over at least nine months of a calendar year, **who meets the minimum qualifications for a job opening at the institution where the employee is currently employed, whether the job be a lateral transfer or a promotion, and applies for same shall be transferred or promoted before a new person is hired** unless the hiring is affected by mandates in affirmative action plans or the requirements of Public Law 101-336, The Americans With Disabilities Act. If more than one qualified, nonexempt classified employee applies, the best-qualified nonexempt classified employee shall be awarded the position. In instances where the classified employees are equally qualified, the nonexempt classified employee with the greatest amount of continuous seniority at that state institution of higher education shall be awarded the position. **A nonexempt classified employee is one to whom the provisions of the federal fair labor standards act, as amended, apply.**

W. Va.Code § 18B-7-1(d)(1995)(emphasis added). Essentially, appellant argues that she is a "nonexempt, classified employee," that she "meets the minimum qualifications for a job opening at the institution where [she] is currently employed," and that WVU was obligated to hire her "before a new person [was] hired." *Id.*

To counter this argument, WVU relies upon its own Board of Trustees' rule, as it appears in the Code of State Rules:

Pursuant to W. Va.Code § 18B-7-1(d), non-exempt classified employees who apply for and meet the minimum qualifications as determined by the institutional human resources director or other designee of the president for **a posted non-exempt position** within an institution and are currently employed at the institution shall be hired into the posted position prior to hiring someone from outside the institution

W. Va.C.S.R. tit. 128 § 31-5.1 (1996) (emphasis added). At base, this controversy concerns the difference between the Code language, "a job opening," and the C.S.R. language, "a posted non-exempt position."

Ms. Maikotter maintains that the phrase, "a job opening," requires no interpretation, and includes both exempt and nonexempt positions. WVU counters that the Legislature has not spoken to that issue, so the Board of Trustees' interpretation is permissible. WVU also argues that applying the statute as Ms. Maikotter suggests would do great violence to the hiring process of the university. It suggests that the university would find itself required to promote janitors to the ranks of the faculty if Ms. Maikotter were to prevail.

First we examine whether or not the Legislature has addressed the issue. WVU argues that, because there is no clear indication of legislative intent, the Board of Trustees' rule is not at odds with the statute. Furthermore, WVU contends that under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and our cases that follow it, and because the legislature has not spoken to the issue at hand, we must pay deference to the university's interpretation of the statute.

We explained the *Chevron* analysis in a case concerning the validity of a Department of Motor Vehicles regulation:

In deciding whether the DMV's position should be sustained, we apply the standards set out by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We first ask whether the Legislature has "directly spoken to the precise [legal] question at issue.... If the intention of the Legislature is clear, that is the end of the matter." *Id.* If it is not, we may

not simply impose our own construction of the statute. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the [DMV's] answer is based on a permissible construction of the statute." *Sniffin v. Cline*, 193 W.Va. 370, 373–74, 456 S.E.2d 451, 454–55 (1995)(internal citations omitted)(citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

In this case, the Legislature chose the phrase "nonexempt" employee at the beginning of subsection (d), and then used the phrase "a job opening" just a few words later. Certainly, had the members of the Legislature wished to limit or describe the types of "job openings" affected, they had ample opportunity; they did not, and it is for neither WVU, nor this Court, to insert words into the statute. Because we feel that the Legislature has spoken to the issue at hand, we need not proceed to the second step described in *Chevron*; thus our ordinary rules of statutory review apply.

Furthermore, we are not persuaded by the specter of a unqualified faculty raised by the university.[6] Protecting WVU from such a fate is the fact that both the statute and the rule require that applicants meet minimum qualifications for any job. This amounts to a substantial safeguard, and allows the appellee to determine, before any opening is posted, what sort of experience, skills, or talents are necessary for a given job, provided that the same have not already been determined by law or contractual agreement.

■■■ And so we turn to an examination of the statutory language. In any search for the meaning or proper applications of a statute, we first resort to the language itself. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of

interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968); Syl. pt. 1, *Peyton v. City Council of Lewisburg*, 182 W.Va. 297, 387 S.E.2d 532 (1989); Syl. pt. 3, *Hose v. Berkeley County Planning Commission*, 194 W.Va. 515, 460 S.E.2d 761 (1995); Syl. pt 2, *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996).

■■■ This "plain meaning" rule binds not only this Court, but also any agency charged with making rules in accordance with a given statute:

> Rules and Regulations of . . . [an agency] must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the . . . [agency's] Rules and Regulations that it has in the statute.

*Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (citing Syl. pt. 4, in part *Ranger Fuel Corp. v. West Virginia Human Rights Commission*, 180 W.Va. 260, 376 S.E.2d 154 (1988)) (which was citing Syl. pt. 2, in part, *Chico Dairy Company v. Human Rights Commission*, 181 W.Va. 238, 382 S.E.2d 75 (1989)). We underline today, that any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

■■■ While logical from the university's perspective, WVU's interpretation of the statute does not, in our view, "faithfully reflect the intention of the legislature." Although it may create some difficulty for WVU, the phrase, "a job opening," contained in W. Va.Code § 18B–7–1(d), means any job

---

**6.** Although there is some confusion in the record, it appears that the parties never reached any final agreement as to Ms. Maikotter's qualifications for the position of Building Services Supervisor.. Although correspondence in the record suggests that WVU had agreed that Ms. Maikotter met the minimum qualifications, counsel at argument was unwilling to represent to the Court that the issue of qualifications had been deter-

mined. In light of our holding and the passage of time since the commencement of this action, we feel that the parties should have another opportunity to address the issue of Ms. Maikotter's qualifications. However, we feel that Ms. Maikotter has substantially prevailed in this action, and should be entitled to the recovery of her attorney fees, pursuant to W. Va.Code § 18–29–8 (1992).

opening, and cannot, short of Legislative intervention, be limited to apply only to "nonexempt" positions. The West Virginia University Board of Trustee's rule contained in W. Va.C.S.R. tit. 128 § 31–5.1 (1996), insofar as it attempts to make such a limitation, is invalid. The language of W. Va.Code § 18B–7–1(d) controls, and the lower court erred when it determined that the WVU rule was not in conflict with the statute.

## IV.

## CONCLUSION

For the reasons set forth above, we reverse the decision of the Circuit Court of Kanawha County and direct that court to determine the relief to which Ms. Maikotter is entitled, in proceedings consistent with this opinion.

Reversed and remanded with directions.

Justice SCOTT did not participate in the decision in this case.

Judge STONE sitting by temporary assignment.

DAVIS, Justice, concurring in part and dissenting in part:

This case presents rather straightforward issues of statutory construction. The majority has correctly concluded that the interpretation WVU seeks to impose on the meaning of "a job opening," as is set forth in W. Va.Code § 18B–7–1(d), does not comport with the manner in which the Legislature used the phrase. No qualifying language was attached to the phrase, therefore, it would be an abuse of our authority to add qualifying language. I therefore concur in the resolution of the substantive issue properly raised by the parties in this case. However, I must depart from the majority opinion with respect to footnote 6 of the opinion. In my judgment this footnote violates state and federal due process guarantees. There-

fore, I am compelled to dissent from its insertion in the opinion.

### A. Neither Party Raised or Briefed the Issue of Attorney Fees

In footnote 6 of the opinion, the majority writes: "[W]e feel that Ms. Maikotter has substantially prevailed in this action, and should be entitled to the recovery of her attorney fees, pursuant to W. Va.Code § 18–29–8 (1992)." This statement might be legally sound, *if the issue of attorney fees was raised by the parties before this Court.* I have thoroughly examined the record in this case. That issue was not raised by either party. For the majority to *sua sponte* order the trial court to award attorney fees, when neither notice nor opportunity to be heard was afforded to WVU on the issue, is a fundamental violation of state and federal due process guarantees. *See Link v. Wabash Railroad Co.,* 370 U.S. 626, 632, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) ("[T]he fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked."); *Norfolk and Western R. Co. v. Sharp,* 183 W.Va. 283, 285, 395 S.E.2d 527, 529 (1990) ("The most fundamental due process protections are notice and an opportunity to be heard.").[1]

It has been repeatedly and unequivocally stated that " '[t]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below[.]' Syl. pt. 6, in part, *Parker v. Knowlton Const. Co., Inc.,* 158 W.Va. 314, 210 S.E.2d 918 (1975)". Syl. pt. 2, in part, *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996). *See Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("facts underlying ... [an] issue will not have been developed in such a way so that a disposition can be made on appeal"); *In re Katie S.,* 198 W.Va. 79, 90, 479 S.E.2d 589, 600 (1996) ("Because of the

---

1. Due process has been generally expressed as follows: "[T]he court which undertakes to determine the rights of the parties must have jurisdiction of the proceeding, that the parties to the proceeding must have due notice, and that they must be afforded a reasonable opportunity to be heard before their rights are adjudicated or de-

termined." *Walter Butler Building Co. v. Soto,* 142 W.Va. 616, 636, 97 S.E.2d 275, 287 (1957). See also *State ex rel. Peck v. Goshorn,* 162 W.Va. 420, 249 S.E.2d 765 (1978); *State ex rel. Payne v. Walden,* 156 W.Va. 60, 190 S.E.2d 770 (1972); *State ex rel. Bowen v. Flowers,* 155 W.Va. 389, 184 S.E.2d 611 (1971).

lack of factual development below, we decline to address this ... issue"); Syl. pt. 4, *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.*, 157 W.Va. 93, 199 S.E.2d 308 (1973) ("This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court."); Syl. pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.").

The text of W. Va.Code § 18–29–8 provides in relevant part: "In the event an employee or employer appeals an adverse level four decision to the circuit court or an adverse circuit court decision to the supreme court, and the employee substantially prevails upon such appeal, the employee or the organization representing the employee is entitled to recover court costs and reasonable attorney fees, to be set by the court, from the employer." Obviously, this statute contemplates the award of reasonable attorney fees to an employee substantially prevailing on appeal.

In only two previous opinions has this Court has addressed W. Va.Code § 18–29–8. Both prior opinions were per curiam opinions. In *University of West Virginia Bd. of Trustees on Behalf of West Virginia University v. Graf*, 205 W.Va. 118, 516 S.E.2d 741 (1998) and in *Putnam County Bd. of Educ. v. Andrews*, 198 W.Va. 403, 481 S.E.2d 498 (1996), we denied the appellant's specific request for attorney fees under the statute. However, in both *Graf* and *Andrews* notice and an opportunity to be heard was afforded to each defendant before this Court made any ruling relating to an award of attorney fees under W. Va.Code § 18–29–8.

In the instant proceeding, the majority has forced the lower court to award attorney fees. In the final analysis, Ms. Maikotter may very well be entitled to attorney fees under the statute. However, the majority should not make such a determination without any analysis, *i.e.*, without affording both parties an opportunity to address the matter. The record is void of any evidence which may or may not militate against such an attorney fee award. Did Ms. Maikotter engage in sanctionable conduct below that would permit the circuit court to deny attorney fees?

The majority cannot answer that question. Nor can the majority answer any of a myriad of defenses WVU may have had to an award of attorney fees, because WVU was not afforded notice and an opportunity to address the issue.

Due process is not a new principle. Due process is an old and faithful doctrine embedded in the constitution of this state. Additionally, its aged protection reaches back to the ratification of the nation's constitution. *See State ex rel. Zirkle v. Fox*, 203 W.Va. 668, 510 S.E.2d 502, 506 (1998), ("The most basic of the procedural safeguards guaranteed by the due process provisions of our state and federal constitutions are notice and the opportunity to be heard, which are essential to the jurisdiction of the court in any pending proceeding."); *State ex rel. United Mine Workers of America, Local Union 1938 v. Waters*, 200 W.Va. 289, 297, 489 S.E.2d 266, 274 (1997) ("[T]he petitioners were denied their fundamental constitutional rights by the issuance of an ex parte preliminary injunction against them without notice or an opportunity to be heard"); *Eastern Associated Coal Corp. v. John Doe*, 159 W.Va. 200, 207 n. 2, 220 S.E.2d 672, 678 n. 2 (1975) ("Failure to give notice and opportunity to defend may deprive court of jurisdiction."). Due process is one of the cornerstone legal principles that separates Anglo–American jurisprudence from many foreign third world legal systems that pay lip service to the idea of notice and an opportunity to be heard. *See* Syl. pt. 2, *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937) ("The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard."). Unfortunately, in this opinion the majority has chosen to disregard an aged and deeply rooted principle in our legal system.

I fail to understand the urgency in denying WVU an opportunity to show why attorney fees may not be appropriate in this case. Ms. Maikotter's failure to raise the issue before this Court could have been fully argued and brief on remand before the circuit court. Additionally, consistent with due process, WVU could have mounted any objection it had to an award of attorney fees. However, with its decision, the majority has denied

WVU this basic right. The role and authority of this Court is not to take sides and favor one party over the other. Our constitutional obligation is to decide issues properly raised, based upon the merits of those issues properly presented to this Court.[2] The issue of attorney fees was not raised in this appeal. Therefore, I believe that constitutional due process principles prohibited this Court from ordering the trial court to grant attorney fees.

For the reasons stated, I concur in part and respectfully dissent in part.

---

**2.** Justice Cleckley eloquently observed in *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996):

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights....

When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must [raise the issue] then and there or forfeit any right to complain at a later time.