564 S.E.2d 425

**Sue Ann SHROYER, Appellant/Grievant Below, Appellant,**

v.

**HARRISON COUNTY BOARD OF ED-UCATION, Appellee/Respondent Below, Appellee.**

No. 30033.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2002.

Decided April 11, 2002.

Dissenting Opinion of Justice Albright May 2, 2002.

Henry M. Hills, III, Esq., Crandall, Pyles, Haviland & Turner, Logan, for Appellant.

Basil R. Legg, Jr., Esq., Clarksburg, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on December 27, 2000. In that order, the circuit court affirmed a decision of the West Virginia Education and State Employees Grievance Board (hereinafter "Grievance Board") denying a grievance filed by the appellant and petitioner below, Sue Ann Shroyer. In this appeal, Shroyer, who is employed by the appellee and respondent below, the Harrison County Board of Education (hereinafter "Harrison County BOE") as a school counselor, contends that the circuit court erred by affirming the decision of the Grievance Board. Shroyer claims that she is required to spend more than 25% of her day engaged in administrative work which is a violation of W.Va.Code § 18–5–18b (1985). In addition, she asserts that she is the victim of discrimination as defined by W.Va.Code § 18–29–2(m) (1992) because she must provide counseling services to approximately 750 students while three other counselors in the school district serve 375 students or less.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

## I.

Sue Ann Shroyer has been employed by the Harrison County BOE for twenty-eight years and has served as a guidance counselor for nineteen of those years. Presently, Shroyer is the sole guidance counselor at Washington Irving Middle School, the largest middle school in Harrison County. Shroyer provides counseling services to approximately 750 students. Although the other middle schools in Harrison County also have only one full-time guidance counselor, Shroyer is required to counsel a substantially larger number of students.[1]

Shroyer claims that she currently spends 55–60% of her work time performing administrative duties, some of which are not even counselor-related. In order to complete her assigned duties, Shroyer says she must do administrative work during her lunch and planning periods, after school, and at home. According to Shroyer, she spends over half of her workday performing activities classified as "administrative" whether counselor-related or not. Those activities include, but are not limited to, putting test scores on permanent records, maintaining student grade records, copying, faxing, and/or mailing tran-

---

1. The approximate student enrollments at the middle schools in Harrison County in September 1998 were as follows:

| | |
|---|---|
| Washington Irving | 736 students |
| Bridgeport | 633 students |
| Lumberport | 517 students |
| Gore | 348 students |
| South Harrison | 323 students |
| Salem | 226 students |

scripts, addressing envelopes, filing, transferring data, and filling out student health cards.

On December 9, 1998, Shroyer filed a grievance alleging that the Harrison County BOE is violating W.Va.Code § 18–5–18b by requiring her to spend more than 25% of her workday engaged in administrative duties. W.Va.Code § 18–5–18b provides, in pertinent part:

School counselors shall be full-time professional personnel, shall spend at least seventy-five percent of work time in a direct counseling relationship with pupils, and shall devote no more than one fourth of the work day to administrative activities: Provided, That such activities are counselor related.

In addition, Shroyer alleged that she is the victim of discrimination as defined by W.Va. Code § 18–29–2(m) because she must provide guidance counseling services to approximately 750 students while three other guidance counselors in the county serve only 375 students or less. Shroyer sought a student-counselor ratio comparable to that of other Harrison County middle school counselors; a reduction in her assigned administrative workload so that she can spend 75% of her work time in a direct counseling relationship with students as required by W.Va.Code 18–5–18b; classification of those counselor duties which are to be considered administrative; and elimination of discriminatory practices in the assignment of additional duties which could be performed by any or all staff personnel.

Shroyer's grievance was denied at Level One on December 21, 1998. She appealed, and a Level Two evidentiary hearing was held on January 15, 1999. The grievance was denied again on February 22, 1999. Shroyer waived Level Three[2] and appealed directly to Level Four. On March 3, 1999, a hearing was held before an administrative law judge (hereinafter "ALJ") of the Grievance Board.

The ALJ found that Shroyer failed to show that she spends more than 25% of her day engaged in activities other than "direct counseling with pupils" and failed to prove that she is a victim of unlawful discrimination. The ALJ relied upon the Comprehensive Developmental Guidance Policy (2315) of the State Board of Education (hereinafter "Policy 2315") which was promulgated as a legislative rule and is set forth in 126 C.S.R. §§ 67–1.1 to 67–4.4 (1993). Policy 2315 contains a list of services which comprise comprehensive developmental guidance programs. 126 C.S.R. § 67–3.2. Policy 2315 further provides that those services which are defined in 126 C.S.R. § 67–3.2.1 to 67–3.2.8 constitute a "direct counseling relationship with pupils" and mandates that "school counselors spend at least seventy-five percent (75%) of their time" engaged in those activities. 126 C.S.R. § 67–4.3. The ALJ found that 75% of Shroyer's activities are those listed in 126 C.S.R. § 67–3.2, and therefore, there is no violation of W.Va.Code § 18–5–18b. Thus, the grievance was denied again on July 22, 1999.

Shroyer timely filed an appeal in the Circuit Court of Kanawha County. After briefing by the parties, the circuit court upheld the decision of the Grievance Board. The circuit court found that W.Va.Code § 18–5–18b is ambiguous warranting a legislative rule to clarify its meaning. The circuit court further found that the definitions set forth in Policy 2315 are not arbitrary and capricious and therefore, must be upheld. With regard to the discrimination claim, the circuit court upheld the Grievance Board's finding that Shroyer failed to satisfy her burden of proof. As noted above, the circuit court entered the final order on December 27, 2000. This appeal followed.

## II.

We begin our analysis of this case by setting forth our standard of review. In Syllabus Point 1 of *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court held that "[a] final order of the hearing examiner for the West

---

**2.** Pursuant to W.Va.Code 18–29–4(c) (1995), a grievant may appeal a Level Two decision directly to Level Four.

Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." However, this Court has also observed that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995). Accordingly, "although we accord great deference to the findings of fact of the West Virginia Educational Employees Grievance Board, we review, *de novo,* questions of law." Syllabus Point 2, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia University,* 206 W.Va. 691, 527 S.E.2d 802 (1999). With these standards in mind, we now address the parties' arguments.

Shroyer first argues that Policy 2315 exceeds the statutory authority of W.Va.Code § 18–5–18b. Shroyer claims that W.Va.Code § 18–5–18b is plain and clear on its face, requiring no "clarification" or "interpretation." In other words, she contends that Policy 2315 is unnecessary because W.Va. Code § 18–5–18b is not ambiguous. By promulgating Policy 2315, Shroyer claims that the State Board of Education has rewritten W.Va.Code § 18–5–18b in a manner that is contrary to the intent of the Legislature when the statute was enacted. In particular, Shroyer claims that the services identified in Policy 2315 as being included within the "direct counseling relationship with pupils" as set forth in W.Va.Code § 18–5–18b are actually excessive administrative duties which is contrary to the statutory language. Shroyer maintains that the activities defined as "assessment" and "information" in Policy 2315,[3] do not involve a "direct counseling relationship with pupils," and therefore, these activities when combined with other administrative activities should consume at the most 25% of

her time. However, Shroyer contends that these activities require at least 55–60% of her time.

In response, the Harrison County BOE asserts that the phrase "direct counseling relationship with pupils" as set forth in W.Va.Code § 18–5–18b is ambiguous and requires clarification by administrative regulation, i.e., Policy 2315. The Harrison County BOE further argues that Policy 2315 is a permissible interpretation of W.Va.Code § 18–5–18b, and therefore, because Shroyer failed to prove that more than 25% of her duties are administrative in nature, the decision of the Grievance Board must be upheld.

■ As noted above, Policy 2315 is a legislative rule promulgated by the State Board of Education. In Syllabus Point 3 of *Appalachian Power, supra,* this Court held that:

> Judicial review of an agency's legislative rule and the construction of a statute that it administers involves two separate but interrelated questions, only the second of which furnishes an occasion for deference. In deciding whether an administrative agency's position should be sustained, a reviewing court applies the standards set out by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court first must ask whether the Legislature has directly spoken to the precise question at issue. If the intention of the Legislature is clear, that is the end of the matter, and the agency's position only can be upheld if it conforms to the Legislature's intent. No deference is due the agency's interpretation at this stage.

Based upon our review of W.Va.Code 18–5–18b, this Court finds that the phrase "direct counseling relationship with pupils" is subject

---

**3.** 126 C.S.R. 67–3.2 provides, in pertinent part:
Comprehensive developmental guidance programs are based on the following services:
. . . .
3.2.2 Assessment—The organizing, collecting and managing of cumulative records, testing information and other procedures and techniques of assessing individual growth and performance. This service includes interpretation of assessment data to be available for students, teachers, parents and administrators to assist them in decision-making;
3.2.3 Information—Collecting and disseminating accurate and current information that will assist students to make intelligent choices about school schedules, four-year plans, post-secondary education programs, and occupations[.]

to different meanings or interpretations and thus, is ambiguous.

Having found that W.Va.Code 18–5–18b is ambiguous, we must now decide if Policy 2315 is a permissible construction of this statute. As this Court explained in Syllabus Point 4 of *Appalachian Power:*

> If legislative intent is not clear, a reviewing court may not simply impose its own construction of the statute in reviewing a legislative rule. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. A valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious. W.Va.Code, 29A–4–2 (1982).

Furthermore,

> Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute.

Syllabus Point 4, *Maikotter, supra.*

Having thoroughly examined Policy 2315, this Court has determined that the State Board of Education did not exceed its constitutional or statutory authority, nor did it act in an arbitrary or capricious manner in promulgating this legislative rule. While this Court may have defined certain terms set forth in Policy 2315 differently than the State Board of Education, "[a]n inquiring court—even a court empowered to conduct *de novo* review—must examine a regulatory interpretation of a statute by standards that include appropriate deference to agency expertise and discretion." *Appalachian Power,* 195 W.Va. at 582, 466 S.E.2d at 433. As this Court further explained *in State ex rel. ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 534–35, 514 S.E.2d 176, 185–86 (1999), "[w]hen a governmental official or administrative agency has exerted its authority by interpreting an unclear statutory provision that it has the duty to implement and execute, this Court historically has extended great deference to such an interpretation, insofar as it comports with accepted notions of legislative intent and statutory construction."

Since this Court has determined that Policy 2315 is a permissible construction of W.Va.Code § 18–5–18b, we now consider whether Shroyer has proven that she spends more than 25% of her time engaged in administrative activities. The circuit court found that even if Shroyer prevailed on her argument with respect to Policy 2315, she still failed to show that she spends more than 25% of her time performing administrative tasks. We agree. Shroyer failed to present evidence at the administrative hearing indicating how much time she spends on activities she considers to be administrative in nature. Accordingly, we affirm the decision of the circuit court on this issue.

Shroyer next argues that the circuit court erred in finding that she failed to establish a prima facie case of discrimination based upon the numerical disparity between the students assigned to her and those assigned to other middle school counselors. W.Va.Code § 18–29–2(m) provides: "'Discrimination' means any difference in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees." Shroyer states that the number of students she must serve is one of the major reasons she has great difficulty completing her assigned duties.

Shroyer maintains that she has shown that she is similarly situated to other guidance counselors in her county in terms of the specific kind of work she does, but that she has been treated differently from those counselors in a significant way, i.e., she has been given a substantially heavier volume of work to perform. This, she contends, has resulted in excessive administrative work beyond that contemplated by statute for her position and beyond that performed by her peers. Thus,

Shroyer claims that she has established a prima facie case of discrimination.

By contrast, the Harrison County BOE claims that Shroyer is not serving more students than she should under the objective ratio for counselor to student. According to the Harrison County BOE, the North Central Accreditation Standard minimum-staffing ratio for one full-time counselor in a middle school is 1000 students to one counselor. Thus, the Harrison County BOE contends that no counselor is given an advantage or treated with preference by virtue of a lower student-counselor relationship so long as no single counselor is required to serve an objectively oversized caseload.

■ The circuit court determined that Shroyer failed to prove discrimination. The court stated:

The definition of "discrimination" requires that the difference in treatment, in order to be unlawful discrimination, must be unrelated to the actual responsibilities of the petitioner. In the present action, any difference in the treatment of the petitioner, vis-a-vis other counselors in the Harrison County system, is due to their position, i.e. their responsibilities. Specifically, it is due to the difference in the number of students at each of the middle schools.

We agree with the circuit court's decision. The difference in student enrollment among the middle schools in Harrison County is directly related to the actual job responsibilities of the school counselors. While it is unfortunate for Shroyer and her students that she has such a heavy caseload, we are unable to find that she has proven discrimination as set forth in W.Va.Code § 18–29–2(m).

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on December 27, 2000 is affirmed.

Affirmed.

ALBRIGHT, Justice.

(Filed May 2, 2002)

I must respectfully dissent from the majority opinion because well-established concepts of judicial review and deference have either been ignored or misapplied. Despite its recitation of the controlling law which governs judicial review of a legislative rule,[1] the majority nonetheless goes seriously astray by concluding, as an initial matter, that certain terms in West Virginia Code § 18–5–18b (1985) (Repl.Vol.1999) are subject to varying interpretations and therefore, provide the necessary ambiguity to permit clarification through the rule-making process. Both the majority, and the circuit court below, wrongly determined that they were required to give deference to the legislative rule promulgated by the state board of education. *See* 126 W.V.C.S.R. §§ 67–3, –4.

In syllabus point three of *Appalachian Power Co. v. State Tax Department,* 195 W.Va. 573, 466 S.E.2d 424 (1995), this Court explained:

Judicial review of an agency's legislative rule and the construction of a statute that it administers involves two separate but interrelated questions, only the second of which furnishes an occasion for deference. In deciding whether an administrative agency's position should be sustained, a reviewing court applies the standards set out by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court first must ask whether the Legislature has directly spoken to the precise question at issue. If the intention of the Legislature is clear, that is the end of the matter, and the agency's position only can be upheld if it conforms to the Legislature's intent. No deference is due the agency's interpretation at this stage.

195 W.Va. at 578–79, 466 S.E.2d at 429–30.

*Appalachian Power* makes clear that the obligation to accord deference to an agency's clarification of statutory language by legislative rule is only invoked when Legislative intent is clearly lacking. *See id.* The statutory language which the majority determined to be "subject to different meanings or interpretations and thus ... ambiguous" was the phrase "direct counseling relationship with pupils." W.Va.Code § 18–5–18b. The stat-

---

1. *See Appalachian Power Co. v. State Tax Depart-* *ment,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

ute is clear in its directive: school counselors are permitted to "devote no more than one fourth of the work day to administrative activities" and the remaining seventy-five percent of their day is to be spent "in a direct counseling relationship" with the students. W.Va.Code § 18–5–18b.

Common sense clearly dictates that the laundry list of counselor activities that qualify as "direct counseling" pursuant to legislative rule [2] simply does not pass the "smell" test. To argue otherwise is to deny the obvious. And, by failing to offer any reasoning in support of its conclusory statement that the term "direct counseling relationship" is ambiguous, the majority suggests that its determination was simply the one required to permit the necessary deference to be extended to the Board of Education which in turn would allow the legislative rule to be upheld.

In rushing to the wrong conclusion regarding the clarity of the statutory terms in issue, the majority demonstrates the danger of granting carte blanche deference to a legislative rule without sufficiently examining the need for such rule enactment in the first place. By "deferring" to the Board-created definition of the term "direct counseling," the majority has enabled the Board to emasculate the clearly-stated intent of the Legis-

lature. How much more patent could the Legislature have been than to announce its decision that school counselors should spend no more than one-fourth of their school day in tasks that are viewed as administrative and which do not typically involve person-to-person contact.

Through the rule-making process that is unique to the state board of education,[3] the provisions of West Virginia Code § 18–5–18b have simply been rewritten to better serve the supposed needs of the local boards of education to accomplish undeniably administrative tasks under the guise of complying with the Legislative directive to devote three-fourths of a guidance counselor's day to one-on-one contact with students. Because I do not approve of this flagrant abrogation of clearly announced Legislative intent and because deference to an agency's legislative rule should not have been extended in this case under well-established principles of review, I must dissent.

I am authorized to state that Justice McGRAW joins in this dissent.

<hr />

**2.** Under title 126 of the Code of State Regulations, series 67, the following items are included within the requirement that a guidance counselor allot 75% of his/her school day to a "direct counseling relationship with pupils":

   3.2.1. Orientation—A series of activities designed to help students who are in a new environment to become acquainted with the school, to know the staff and physical plant, to understand the structure of courses and requirements, to know school customs and activities, to become acquainted with one another, and to develop a sense of purpose and of belonging;

   3.2.2. Assessment—The organizing, collecting and managing of cumulative records, testing information and other procedures and techniques of assessing individual growth and performance. This service includes interpretation of assessment data to be available for students, teachers, parents and administrators to assist them in decision-making;

   3.2.3. Information—Collecting and disseminating accurate and current information that will assist students to make intelligent choices about school schedules, four-year plans, postsecondary education programs, and occupations;

   3.2.4. Counseling—Individual or group interactions which employ techniques to assist students in working out solutions to academic, personal, and social problems;

   3.2.5. Consultation—Interaction with parents, teachers, other educators and community agencies regarding strategies to help students;

   3.2.6. Educational Planning—A process of providing students the assistance needed to select courses in the middle or junior high school years and to formulate their four-year educational plans that will enable them to make a successful transition from high school to postsecondary education or employment;

   3.2.7. Placement—Organized procedures for locating appropriate employment or further training for students;

   3.2.8. Follow-up—A systematic plan for maintaining contact with former students and obtaining data for evaluating the effectiveness of the guidance program.

126 W.V.C.S.R. §§ 67–3.2.1 to –3.2.8.

**3.** *See* W.Va.Code §§ 29A–3B–1 to –12 (1990) (Repl.Vol.1998); *cf.* W.Va.Code §§ 29A–3–1 to –17 (1982) (Repl.Vol.1998).